# STATE OF CONNECTICUT *v.* SANTOS ROLON
## (SC 16451)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

Argued March 14—officially released July 31, 2001

*Sarita I. Ordonez*, special public defender, with whom were *Michael O. Sheehan*, special public defender, and, on the brief, *Richard A. Reeve*, special public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary A. SanAngelo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. A jury found the defendant, Santos Rolon, guilty of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A),[2] and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] The defendant appealed from

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[3] The defendant was charged in the substitute information under a version of the risk of injury statute other than the one in effect at the time of the alleged crime, which occurred between January, 1994, and April 3, 1995. General Statutes (Rev. to 1995) § 53-21 provided: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health

the judgment of conviction to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The charges, which resulted in the defendant's conviction, were brought after the victim, J., the defendant's granddaughter, divulged to a social worker from the department of children and families (department) that she had been sexually abused by the defendant on several occasions while living in New Haven. The department and the New Haven police conducted an investigation, which resulted in the defendant's arrest, trial and conviction. On appeal, the defendant argues, inter alia, that he was deprived of his constitutional rights under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution because the trial court excluded evidence regarding the alleged prior sexual abuse of J. by another individual.[4] We reverse the

is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." The substitute information alleged that the defendant had committed risk of injury by having "contact with the intimate parts of a child . . . under the age of sixteen years, in a sexual and indecent manner likely to impair the health or morals of such child, said conduct being in violation of Section 53-21 (a) (2) of the Connecticut General Statutes." Number 95-142, § 1, of the 1995 Public Acts added to § 53-21, as revised to 1995, the following language, currently found in subdivision (2) of subsection (a): "has contact with the intimate parts . . . of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . ." That amendment took effect October 1, 1995, after the occurrence of the acts that formed the basis of the charge in question here.

[4] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

judgment of conviction.[5]

The defendant contends that the trial court: (1) deprived him of his constitutional rights to confrontation, to present a defense and to a fair trial when it improperly applied Connecticut's rape shield statute; General Statutes § 54-86f;[6] and denied him the opportu-

Article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, is textually similar to the sixth amendment to the federal constitution and provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[5] We do not reach the defendant's argument regarding the "source of injury" exception to General Statutes § 54-86f. It is not necessary for us to address the defendant's claim that he should have been allowed to introduce evidence of past sexual abuse to show that he was not the source of the victim's psychological injury because we conclude separately that the defendant should have been allowed to introduce the evidence because its exclusion violated his constitutional rights to confrontation and a fair trial. This opinion does not attempt to answer the question of whether "psychological injury" falls within the "source of injury" exception to the rape shield statute.

[6] General Statutes § 54-86f, which concerns the admissibility of evidence of sexual conduct by the victim of a sexual assault and which is also known as the "rape shield statute," provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and

nity to cross-examine witnesses on, or introduce evidence of, the prior sexual abuse of J. to show a possible alternative source of the sexual knowledge she displayed; and (2) improperly allowed three constancy of accusation witnesses to testify regarding the details of the alleged sexual assault in violation of the rule set forth in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996). We agree with the defendant that he is entitled to a new trial because he was denied his constitutional rights to confrontation, to present a defense and to a fair trial when the trial court prohibited him from presenting evidence of J.'s prior sexual abuse where the factual similarities between the present and previous instances could have: (1) demonstrated an alternative source for J.'s sexual knowledge; and (2) resulted in J.'s confusion over the identity of the perpetrator. Accordingly, we reverse the judgment and remand the case for a new trial.[7] We also conclude that the trial court abused its discretion by allowing the

material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[7] We need not, and therefore do not address the defendant's remaining contentions. Specifically, we do not address the issues of: (1) whether the psychological trauma the victim suffered from the prior sexual abuse invoked the "source of injury" exception to the rape shield statute; or (2) whether the trial court abused its discretion by selectively allowing the admission of "sexualized play" between the victim and her brother for purposes of demonstrating that the victim exhibited characteristics of a sexually abused child.

detailed testimony of three constancy of accusation witnesses in violation of the standards governing admission of such testimony set forth in *State* v. *Troupe*, supra, 304–305.[8]

The following facts and procedural history are relevant to the issues on appeal. The victim, J., born on March 9, 1990, resided in Puerto Rico with her mother, N., and her younger brother, L., until January, 1994. While in Puerto Rico, N., a diagnosed schizophrenic, experienced severe mental health problems rendering her unable to take care of herself or her children. N.'s father, the defendant, went to Puerto Rico and brought her back to New Haven to obtain treatment and counseling. J. and L. remained in Puerto Rico with their father, paternal grandmother and the paternal grandmother's boyfriend.[9] In 1994, N. returned to Puerto Rico with the defendant to seek custody of her children. The record indicates that during the custody proceedings, J. exhibited behavior indicative of having been sexually abused. The court in Puerto Rico found that J.'s paternal grandfather had been sexually abusing her since she was as young as eight months of age.[10] As a result, the court awarded custody of both children to N. Custody, however, was conditioned upon the court's order that the family reside with the defendant in Connecticut.[11]

The defendant and his family returned to New Haven in January, 1994.[12] While living in New Haven, J. and

[8] Although our conclusion on the first issue is dispositive of this appeal, we address the defendant's second claim because the issue is likely to arise on retrial.

[9] This individual is referred to in the record as J.'s paternal grandfather.

[10] Prior to trial, the state stipulated to the fact that J. had been sexually abused in the past by her "paternal grandfather." As stated in footnote 9 of this opinioin, J.'s paternal grandmother's boyfriend is referred to as J.'s paternal grandfather.

[11] This was ordered because of N.'s mental illness.

[12] The family lived in one apartment in New Haven from January, 1994, until April, 1995, when they moved to another apartment there.

L. began acting out sexually toward one another. N. reported finding them "touching and kissing each other." Concerned that the behavior was linked to the abuse J. had suffered in Puerto Rico, the defendant and N. contacted the department to obtain counseling. Several other organizations also treated J. for the trauma she had incurred as a result of the abuse in Puerto Rico, including the department, Hill Health Center (Hill center), and the Yale New Haven Child Sex Abuse Clinic (Yale clinic).[13]

In April, 1995, the defendant moved his family to a larger apartment. By this time, however, the relationship between the defendant and N. had deteriorated significantly. N. reported to social workers that the defendant was too controlling, that his punishment of the children was too severe and that he had a violent temper. In May, 1995, N. went to the department and explained to social workers there her fear of the defendant. As a result, police escorted N. to the defendant's apartment to remove her belongings and those of the children. N. took the children and moved out of the defendant's home. The family moved to Willimantic, where J.'s maternal grandmother lived with N.'s older son. After temporarily residing with her mother, N. moved to her own apartment with her two younger children. The family did not see the defendant again after moving out of his home.

Social workers employed by the department in Willimantic continued to treat the family after their move from New Haven. According to social worker Syndia Serrano, the focus of J.'s treatment was the sexual abuse that she had suffered while living in Puerto Rico. J. and L. were also taught how to cope with their mother's mental illness. Social workers continued to observe N.'s

---

[13] The record indicates that all three facilities kept records on J.'s treatment in 1994 for the sexual abuse that had occurred in Puerto Rico.

neglect of the children, however, despite her continued treatment. As a result, in March, 1996, while the family was still under the care and monitoring of the department, the commissioner filed a petition for temporary custody. The children were removed from N.'s care and taken to the department for processing and placement in foster care. On that date, social workers observed "sexual play" between J. and L. The children built a "tent," went inside, and were kissing and touching each other. The observation of that behavior led the department to place the children in separate foster homes. After being removed from N.'s care, J. and her brother continued counseling with the department in Willimantic. During 1994 and 1995, J. was counseled by Serrano, and the two became very close.

Approximately ten months after J. was removed from N.'s care, J. first disclosed to Serrano the defendant's alleged sexual abuse. Alarmed by the disclosure, Serrano reported to the department's investigative office that J. told her that "when she lived with her mother and [the defendant] in New Haven, [the defendant] would 'kiss her all over.' . . . J. reported that when she told [the defendant] to stop, he would not." She usually referred to the defendant as "Poppy Santos." At that time, J. was also in counseling at United Services Counseling Center in Willimantic and had made similar disclosures of the sexual abuse.[14] Michelle Lumb, an investigative social worker, was assigned to the case. Lumb interviewed J. after discussing her history with Serrano. J. told Lumb that the defendant "put his hands and 'huevitos' on her 'chocha'." "Huevitos" is the Spanish word for the male genitalia; "chocha" is the Spanish word for vagina or female genitalia. Lumb showed J.

[14] The record indicates that J. was being counseled at United Services in Willimantic by a therapist named Yadirrah Haddock, to whom she had made similar disclosures. Haddock, who originally was identified as one of the state's constancy of accusation witnesses, did not testify at trial.

anatomically correct drawings of a young girl approximately J.'s age and of an older man resembling the defendant. J. told Lumb in Spanish that "Poppy Santos" had "put his 'huevitos' on her 'chocha.' " When Lumb asked J. to circle the areas where the defendant had touched her, she indicated the genital, buttocks and breast areas. When Lumb asked J. to indicate what parts of his body the defendant had used to touch her, she indicated his hands and his genital area.

Lumb contacted the New Haven police department and informed Detective Lisa Fitzgerald of the details of J.'s disclosure. Fitzgerald subsequently contacted the defendant and notified him of the allegations. The defendant denied ever having touched J. in an inappropriate manner. When Fitzgerald contacted N. about the allegations, she was very hostile and said that her daughter was fabricating the story. Fitzgerald contacted clinics and health care facilities that had counseled J., which included the department, the Hill center, and the Yale clinic. In an interview with Florence Fruedenthal of the Yale clinic, Fitzgerald was informed of the prior sexual abuse in Puerto Rico for which J. had been counseled in 1994 and 1995. Fitzgerald noted in her arrest warrant that Fruedenthal "stated that [J.] had stated to her that Rene [Salvia] had touched her here and here pointing to her vaginal and anal area . . . that Rene had touched her with his hand and fingers . . . ."[15]

As part of the investigation, counselors arranged for J. to have a medical examination in order to document any physical manifestation of the defendant's alleged sexual abuse. In June, 1996, J. was accompanied by Serrano to the Yale clinic for a physical assessment. Janet Murphy, the examining nurse, was informed of J.'s allegations against the defendant, and that the sex-

---

[15] Salvia is the individual referred to as J.'s paternal grandfather.

ual abuse was alleged to have occurred during the period from January, 1994 until approximately April, 1995. Thus, at the time of J.'s medical examination, a little more than one year had passed since the alleged abuse. According to Murphy, the physical examination was inconclusive, revealing only some vaginal irritation that could have been caused by any number of factors. Murphy also noted, however, that J.'s delayed disclosure could have led to the inconclusive findings because any significant injuries caused by the sexual abuse would have had time to heal. Inconclusive findings of that nature are common when there is a delayed disclosure. Murphy prescribed some cream for the irritation but made no conclusive finding regarding sexual abuse. Despite the lack of physical evidence, Fitzgerald determined that there was probable cause for the defendant's arrest in light of J.'s disclosures and the subsequent police investigation. The defendant turned himself in and was charged with the aforementioned offenses. He entered a plea of not guilty to all charges.

In September, 1996, the defendant filed a pretrial motion for discovery and inspection of certain materials and information. That motion, although denied in part, unearthed documents that disclosed J.'s past sexual abuse while in Puerto Rico, and the state stipulated to its occurrence.[16] The defendant filed memoranda in

---

[16] The court denied the following requests: "(3) (d) The names, addresses, and any transcribed, recorded, or written statements of all persons who have been interviewed by any federal, state or local prosecuting authority, law enforcement agent, or any other person acting at the behest of a government agent in connection with this case who will not be called as a witness for the State in connection with this prosecution . . . (3) (f) The material health records . . . of any and all persons who may be called to testify as witnesses for the State at any stage of the prosecution of this case . . . ."

The trial court also denied a supplemental motion for disclosure that sought answers to interrogatories regarding: (1) whether J. had at any relevant time been a patient in counseling or psychotherapy; and (2) the names and addresses of any psychiatrist, psychologist, neuropsychologist, social worker or therapist who had conducted those sessions.

support of the admissibility of the past sexual abuse evidence, arguing that it was both necessary and relevant to his defense. Specifically, the defendant sought the introduction of the Hill center records with respect to "relevant declarations made by [J.] regarding her past sexual conduct, previous history of injury and disease caused by someone other than the defendant, [and] her medical and psychiatric interventions and therapeutic treatments." The Hill center records were offered to show the possible "mental confusion that there might be existing in the victim's mind with respect to the identity of the alleged perpetrator" since the two incidents both involved grandfather figures and were "not that remote in time."[17] The defendant claimed that the prior sexual abuse evidence was "so relevant and material to a critical issue in the case that excluding it would violate [his] constitutional rights . . . namely, his right to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel for his defense . . . ."

The defendant's offer of proof was that the Hill center records would show the similarities between the allegations in both the Puerto Rico and the New Haven incidents of sexual abuse, and that those similarities would show a possible alternative source for J.'s sexual knowledge, an issue critical to his defense.[18] Citing *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984), the defendant argued in a memorandum submitted to the court that evidence of the prior sexual assaults should be

[17] The defendant also argued that "[t]he timing of the statements made to Hill . . . center and then to the [d]epartment . . . could show differences in reporting by [J.] that would prove that [the statements] were not made at a time when it was natural for accusations to be made, therefore, becoming a critical issue in the defendant's defense." J.'s delayed disclosure, however, is not relevant to the issues in this appeal.

[18] The defendant also made a "source of injury" argument. Because psychological trauma is not recognized as an "injury" under § 54-86f, the court did not consider this argument.

admitted "to show that [J.] [had] mistakenly accused the [d]efendant of sex offenses which someone else had committed at previous times . . . ." He also claimed that "admission of evidence to show a commonality of circumstances of the prior offenses to the ones alleged against him should be allowed, when such prior offenses are not so remote in time, [are] similar to the offenses charged and are committed by a person that may be similar in [J.'s] mind to the [d]efendant." The trial court, *Devlin, J.*, found a reasonable basis for in camera review of the records based on the general rationale of *Esposito*, despite its factual differences.[19]

In August, 1998, the state filed a motion in limine regarding the admissibility of evidence of sexual conduct, seeking to "prohibit defense counsel from introducing any evidence of and from cross examining [J.] as to her sexual conduct except for that relating to this case and this defendant . . . ." The state argued that the evidence was inadmissible under § 54-86f, which protects the privacy of victims where the prejudice to the victim far outweighs the probative value of the admissibility of such evidence. Citing *State* v. *Kulmac*, 230 Conn. 43, 53, 644 A.2d 887 (1994), as "directly on point," the state argued that the rape shield statute was meant to "protect the victim's personal privacy" and "shield [the victim] from unnecessary harassment and embarrassment" by preventing the admission of this

---

[19] "[The Court]: [Y]ou [have] a six year old complainant who, apparently, was abused by a paternal grandfather figure and that report comes out the defendant and the girl's mother take her to a treatment center. She receives 10 months of treatment and . . . at some point . . . thereafter there's a criminal complaint against this defendant. The claim is that the sort of unusual combination of circumstances here and the age of the complainant form a basis to believe that there may be some confusion between these incidents among older men that occupy somewhat similar positions in [J.'s] life. You don't think that's a reasonable basis to make an in camera inspection of those records?

"[James Dinnan, Assistant State's Attorney]: No, I don't, Your Honor.

"[The Court]: Okay, I disagree."

type of evidence of a sexual assault victim's prior sexual conduct, especially in those cases where there is no issue of mistaken identity. The state asserted, therefore, that there was "no reason why any evidence about what occurred to [J.] [in the past] should be relevant to this particular case." The state also claimed that the evidence being offered did not meet any of the statutory exceptions to § 54-86f, was not relevant to any critical issue in the case, did not affect J.'s credibility and did not interfere with the defendant's right to confrontation and due process because he would have an opportunity to cross-examine J.[20] The state stressed that prior incidents of sexual abuse could not be brought in "merely to attack the credibility of [J.] . . . [without satisfying] a clear exception to the rape-shield standard."

At a pretrial hearing on the state's motion, the defendant argued that he had a right to confront J. on several issues including: (1) the source of her sexual knowledge or injuries; (2) her credibility; and (3) the significance of the delay in her disclosure of the abuse. The defendant claimed that the prior sexual abuse J. had suffered in Puerto Rico was substantially similar to the alleged sexual abuse and, therefore, was relevant to show that there may have been either: (1) another source from which J. could have obtained her sexual knowledge (or injury); or (2) a question as to J.'s credibility with respect to the charges because of inconsistencies in

---

[20] At a hearing prior to the court's ruling on the state's motion in limine, the defendant moved for a psychiatric examination by an expert witness. The defendant argued that such an examination was essential "for the defense to present what it needs to show in its burden of proof with regards to the motion in limine." The defendant's counsel asserted that granting the state's motion in limine would "prevent completely" the defendant's right to present a defense, "a particular defense with respect to claims . . . regarding transference of one episode [of sexual abuse] to the other, meaning one episode of child [sexual] abuse that occurred . . . during the prior occasion by the other, relative and [the other episode being alleged against] my client." The trial court denied the motion for lack of a sufficient offer of proof.

reporting and similarities between this and past sexual abuse. The defendant claimed that the prior sexual abuse evidence would explain J.'s advanced sexual knowledge and, without it, the state would get "the upper hand" when it refused to raise the issue on direct examination, thereby precluding cross-examination of J. on that subject. The defendant argued that if the department's observations and testimony were going to be offered about "what [J.'s] grandfather did" without mentioning which grandfather, he would be precluded from asking if "[the] activity happened to her more than once." Thus, without evidence of the prior abuse, he could not examine any witness, whether on cross-examination or direct, in order to clarify who committed the sexual abuse or whether or not J. simply was confused. Notwithstanding the defendant's argument seeking the admission of the alleged exculpatory evidence, the trial court granted the state's motion in limine excluding the prior sexual abuse evidence.

Citing the legislative intent behind § 54-86f, the state filed additional pretrial motions requesting that the court restrict "defense counsel from attempting to elicit testimony from witnesses concerning their belief in the truth of [J.'s] assertions [on the grounds that] [t]he credibility of the complaining witness is a matter for the jury to determine . . . ." The state's motions were intended to prohibit the defendant from "inject[ing] extraneous issues into the case such as matters determined by the court in Puerto Rico or any present issues involving custody in Juvenile Court . . . ." The motions were granted and, thus, the defendant was barred from raising at trial any issue concerning J.'s past sexual abuse.

At trial, J.'s testimony concerned only the allegations against the defendant. She testified that "Poppy Santos" would "take [her] into his bedroom," "lock the door" and do "bad stuff . . . [t]hat he wasn't supposed to do

. . . fresh stuff." J. testified that the defendant would lock them both in his room and he would try to take her pants off and she would hide or try to escape under the bed. She testified that he would put her in his bed and "he'd hold his feet with [her] feet and then he'd hold his hands with [her] hand" and that she could not get up. J. also testified that the defendant would sometime take off both her pants and her underpants, that he would remove his pants and "try to put his private into [hers]," or that he would touch her private parts with his hands and fingers, and "[i]t hurted." J. claimed that she would tell the defendant to stop, but he would not. Finally, J. described when the defendant would try to make her touch his "wee-wee," but that she "would put [her hands] straight" in order to avoid touching it, because she did not like touching him. On cross-examination, the defendant strictly was limited to questions regarding the current allegations because the state did not raise the issue of prior abuse during J.'s direct testimony. Accordingly, the defendant was unable to question J. regarding issues that might indicate to the jury another source for her mature sexual knowledge. Thus, cross-examination of J. was limited to rehabilitating the defendant's character by showing that he had a positive relationship with J. that would never lead to such abuse. The defendant's attempts to elicit inconsistent testimony and call into question J.'s credibility mostly were unsuccessful. J. seemed intimidated by the formal proceedings owing to her young age and her traumatic experiences and was, therefore, uncooperative when the defendant attempted to test her sexual knowledge or elicit testimony that might suggest prior abuse.[21]

---

[21] Defense counsel asked J. about the anatomically correct drawings, how many times she had seen them and how she was familiar with them. He also asked her if she had seen Poppy Santos' private parts. J. answered in the negative to all of the defendant's questions and provided no information indicative of prior abuse. We note, however, that "[a] child victim's apprehensive demeanor and reliance on euphemisms . . . do not establish that she has failed to display extraordinary sexual knowledge for her age. . . . It is

The state offered several constancy of accusation witnesses to corroborate J.'s story, including Serrano, Lumb, Fitzgerald, Murphy, and the state's expert, John Leventhal, a physician with the Yale clinic. Serrano and Lumb both corroborated J.'s testimony. Lumb described the anatomically correct drawings that J. had used to illustrate how the defendant had perpetrated the alleged sexual abuse, and she testified that J. specifically pointed out the hands, buttocks and genital areas on the male and female drawings. Both Serrano and Lumb provided details of their interviews with J. and testified as to the substance of her disclosures. Murphy, also offered as a constancy of accusation witness, repeated the allegations as they were reported to her by the department and put them in the context of J.'s physical examination. Finally, Leventhal, offered as an expert on the reactions and behaviors of children who have been sexually abused, testified on both the physical and psychological manifestations of sexual abuse in a child, generally and as applied to the facts in J.'s case. Leventhal stated that: (1) delayed disclosure is common among child sexual abuse victims; (2) misbehavior on the part of a child could be indicative of sexual abuse; and (3) different kinds of physical manifestations can result from child sexual abuse and not all of them may be detectable through medical examination depending on the extent of the abuse and the passage of time.[22] Leventhal's testimony also discussed the inconclusiveness of the medical findings in J.'s case, pointing out that such findings are common in cases where there

the nature and extent of a child victim's sexual knowledge, not simply the manner in which she describes it, that must be evaluated . . . ." *State* v. *Warren*, 711 A.2d 851, 856 (Me. 1998).

[22] While being interrogated during cross-examination about emotional findings of sexual abuse, Leventhal mentioned the sexual play that social workers had witnessed between J. and her brother. The defense argued that this opened the door to prior sexual conduct evidence. It was defense counsel's question, however, that elicited Leventhal's controversial answer, so the trial court did not find it prejudicial to the defense.

is a delay between the abuse and the reporting, or when there is a question as to penetration. The state rested its case after the testimony of Leventhal. The defendant filed a motion for judgment of acquittal, which was denied.

The defendant then called several witnesses, all of whom had been instructed, outside the presence of the jury, not to speak about the prior sexual abuse that had occurred in Puerto Rico. The defendant's wife and other relatives were restricted to testifying only as to the defendant's good character and his positive relationship with J. Each of them testified that the defendant would not have committed the sexual abuse. Dianabel Aviles, a psychotherapist at the Hill center who had treated J. after her disclosures of the sexual abuse in Puerto Rico, pointed out to the court, in the absence of the jury after the court's limiting instruction, that "[t]he presenting problem, the identifying problem had to do with what happened in Puerto Rico."[23] Aviles, nevertheless, was restricted to discussing only her observations of family interaction, her knowledge of the excessive discipline the defendant used with the children as divulged by N., and the deterioration of the relationship between the defendant and N. At the close of his case, the defendant again moved for a judgment of acquittal. The motion was denied. Jury deliberation began on September 28, 1998. On September 29, 1998, the jury returned a verdict of guilty on all counts.

I

The defendant first claims that the trial court violated his constitutional rights under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution by excluding evidence that J. was sexually abused by another

---

[23] According to Aviles, the Hill center had had the case since February, 1994. One other therapist had worked on it before Aviles but had since left.

family member, namely, her paternal grandfather. The defendant claims that subdivision (4) of § 54-86f allows the admission of J.'s past sexual conduct if it helps to prove a relevant and material issue critical to the defendant's case that, if excluded, would result in a violation of his constitutional rights. He argues that the court's exclusion of the prior sexual abuse evidence violated his rights to confrontation, a fair trial and to present a defense by: (1) preventing him from showing an alternate source for the victim's sexual knowledge; and (2) eliminating an entire line of questioning that would have called into question the victim's credibility. We agree that the evidence of the victim's prior sexual abuse was critical to the defense and should have been admitted at trial.

We first set forth the standard of review for determining whether the exclusion of this evidence entitles the defendant to a new trial. Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. *State* v. *Provost*, 251 Conn. 252, 257, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000); *State* v. *Thomas*, 205 Conn. 279, 283, 533 A.2d 553 (1987). "The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citations omitted; internal quotation marks omitted.) *State* v. *Casanova*, 255 Conn. 581, 591, 767 A.2d 1189 (2001).

"Although the outright denial of a defendant's opportunity to cross-examine a witness on an element of the charged offense implicates the constitutional protec-

tion of the confrontation clause, such a denial is [still] subject to harmless error analysis . . . [which will result in a new trial] only if the exclusion of the proffered evidence is not harmless beyond a reasonable doubt. *State* v. *Colton*, [227 Conn. 231, 253, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996)].

"Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Citations omitted; internal quotation marks omitted.) *State* v. *Casanova*, supra, 255 Conn. 595; see *State* v. *Colton*, supra, 227 Conn. 253–54.

For the reasons set forth below, we conclude that the trial court clearly abused its discretion in excluding the evidence of the victim's prior sexual abuse. Without that evidence, the defendant was unable to elicit testimony on an issue critical to his defense or to present evidence capable of creating a reasonable doubt in the minds of the jury. Specifically, the defendant was unable to prove that there was an alternative source not only for the victim's sexual knowledge, but also for the behavior that the state's expert referred to as "common to child sexual abuse victims."

### A

It is well established that a defendant has the right to confront witnesses against him as guaranteed by

the confrontation clauses of both our federal and state constitutions. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers* v. *Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Pointer* v. *Texas*, 380 U.S. 400, 403–404, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek*, 204 Conn. 683, 691–92, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988); *State* v. *Maldonado*, 193 Conn. 350, 356, 478 A.2d 581 (1984); *State* v. *Wilson*, 188 Conn. 715, 721, 453 A.2d 765 (1982). "[T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." (Internal quotation marks omitted.) *State* v. *Stange*, 212 Conn. 612, 624–25, 563 A.2d 681 (1989), quoting *State* v. *Torres*, 210 Conn. 631, 644, 556 A.2d 1013 (1989); see *State* v. *Mastropetre*, 175 Conn. 512, 520, 400 A.2d 276 (1978), quoting *Chambers* v. *Mississippi*, supra, 294.

We are mindful, however, that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) *State* v. *Alexander*, 254 Conn. 290, 298, 755 A.2d 868 (2000), quoting *Chambers* v. *Mississippi*, supra, 410 U.S. 295; see also *State* v. *Bonello*, 210 Conn. 51, 55, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989); *State* v. *Jarzbek*, supra, 204 Conn. 693. For example, the trial court has a "right, indeed, [a] duty, to exclude irrelevant evidence." *State* v. *Mastropetre*, supra, 175 Conn. 521; *State* v. *Talton*, 197 Conn. 280, 283–85, 497 A.2d 35 (1985). The rules excluding evidence from criminal trials, however, may not be "arbitrary or disproportionate to the pur-

poses they are designed to serve." (Internal quotation marks omitted.) *United States* v. *Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998), quoting *Rock* v. *Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).

We recognize that, in cases involving sexual crimes, "[t]he rape shield statute . . . was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material." (Citations omitted; internal quotation marks omitted.) *State* v. *Christiano*, 228 Conn. 456, 469–70, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); see also *Davis* v. *Alaska*, supra, 415 U.S. 320. In this case, the state and the trial court relied upon the legislative intent behind the rape shield statute in excluding the prior sexual abuse evidence in order to "[protect] the victim's sexual privacy . . . [shield] her from undue harassment . . . and [enable] [her] to testify in court with less fear of embarrassment." (Citations omitted; internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 658, 712 A.2d 919 (1998), quoting *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). However, "[a]lthough the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh the defendant's competing constitutional interests." *State* v. *Christiano*, supra, 470; see also *Davis* v. *Alaska*, supra, 320.

We must remember that "[t]he determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case." *State* v. *Christiano*, supra, 228 Conn. 470; see, e.g., *Chambers* v. *Mississippi*, supra, 410 U.S. 284; *State* v. *Mastropetre*, supra, 175 Conn. 521; see also *State* v. *Manini*, 38 Conn. App. 100, 113–14, 659 A.2d 196, cert.

denied, 234 Conn. 920, 661 A.2d 99 (1995). In every criminal case, the defendant has an important interest in being permitted to introduce evidence relevant to his defense. "Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . *State* v. *Coleman*, [241 Conn. 784, 788–89, 699 A.2d 91 (1997)]." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 54, 770 A.2d 908 (2001), quoting *State* v. *DeCaro*, 252 Conn. 229, 257, 745 A.2d 800 (2000). "Whenever the rape shield statute's preclusion of prior sexual conduct is invoked, a question of relevancy arises. If the evidence is probative, the statute's protection yields to constitutional rights that assure a full and fair defense." *People* v. *Hill*, 289 Ill. App. 3d 859, 862–64, 683 N.E.2d 188 (1997), cert. denied, 174 Ill. 2d 540, 689 N.E.2d 1143 (1998). If the defendant's offer of proof is sufficient to show relevancy, and that the evidence is more probative to the defense than prejudicial to the victim, it must be deemed admissible at trial. See *State* v. *Manini*, supra, 113–14; *State* v. *Pulizzano*, 155 Wis. 2d 633, 649–50, 456 N.W.2d 325 (1990).[24] "When the trial court excludes defense evidence that provides the defendant with a basis for cross-examination of the state's witnesses, [despite what might be considered a sufficient offer of proof] such exclusion may give rise to a claim of denial of the right to confrontation and to present a defense." *State* v. *Casanova*, supra, 255 Conn. 592; see *State* v.

---

[24] "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Casanova*, supra, 255 Conn. 591, quoting *State* v. *Prioleau*, 235 Conn. 274, 305, 664 A.2d 743 (1995). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Casanova*, supra, 591.

*DeCaro*, supra, 258; *State* v. *Colton*, supra, 227 Conn. 249.[25]

In order to determine whether evidence of prior sexual abuse properly was excluded in the context of this sexual assault case, therefore, we refer to the strictures of Connecticut's rape shield statute. General Statutes § 54-86f prohibits the admission of a victim's prior sexual conduct, in relevant part, "unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of . . . injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct . . . or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ." The trial court is vested with wide discretion when considering whether evidence is relevant in a particular case. See *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992); *State* v. *Echols*, 203 Conn. 385, 392, 524 A.2d 1143 (1987); see also *State* v. *Kulmac*, supra, 230 Conn. 54 (evidence of prior sexual conduct of victim that would be inadmissible under other provisions of statute admissible if otherwise so relevant and material to critical issue in case that excluding it would violate defendant's constitutional rights). Consequently, whether the record supports a defendant's offer of proof on the admissibility of a complainant's prior sexual conduct is a matter to be determined by the trial court on a case-by-case basis. See *State* v. *Jarzbek*, supra, 204 Conn. 704; see also *Tague* v. *Richards*, 3 F.3d 1133, 1137 (7th Cir. 1993) (although state rape shield statute may be held constitutional on its face, "constitutionality of such a

[25] "Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis." *State* v. *Jones*, 205 Conn. 723, 731, 535 A.2d 808 (1988).

law as applied to preclude particular exculpatory evidence remains subject to examination on case by case basis"). "A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." *State* v. *Sullivan*, supra, 244 Conn. 647.

## B

Relying on *State* v. *Kulmac*, supra, 230 Conn. 43, and the legislative intent underlying § 54-86f, the state argues that the evidence of J.'s past sexual abuse is irrelevant in this case. The state further argues that the evidence does not fall within any exception to § 54-86f, does not affect J.'s credibility, and does not interfere with the defendant's constitutional rights because he will still have the opportunity to cross-examine J.[26] See id., 50–56. The defendant argues, however, that the "alternative source of sexual knowledge theory" is both material and relevant to his claim that J. was confusing him with her grandfather in Puerto Rico because of her young age at the time of the previous assault, the reasonably close proximity in time between the first assault and the current allegations, the similarities between the prior assault and the current allegations, and the fact that the accusations against the defendant arose while J. was being counseled for the prior abuse. Furthermore, the defendant argues that he should be able to prove that if the prior incidents did occur, they could be the basis for J.'s familiarity with sexual intercourse. The prior abuse, as an alternative source of sexual knowledge, may have given J. the experience necessary to create a parallel story with the defendant as the perpetrator. If the evidence is excluded, the defendant will not have the opportunity to cross-exam-

---

[26] During the hearing on the motion, it was the state's position that the rape shield statute was "made specifically to exclude evidence like [prior sexual abuse] and to protect the victim's privacy. [The assistant state's attorney was] trying to avoid [wasting time] on a collateral matter."

ine J. on the issue of the source of her sexual knowledge, e.g., whether that knowledge came from the current or former alleged sexual abuse.

The state also relies *State* v. *Kulmac*, supra, 230 Conn. 43, in arguing that the evidence was properly excluded because it was prejudicial to J. and was irrelevant for purposes of this case and this defendant. In *Kulmac*, the defendant argued that he should be permitted to examine the two young girls charging him with sexual assault regarding past abuse perpetrated against them by their father and, in the case of one of the complainants, two other men. Id., 51. He argued that past sexual abuse evidence "was relevant to demonstrate that [the complainants] had mistakenly attributed assaults allegedly committed on [them] by other people to the defendant." Id. He further argued that "the multiplicity of people who sexually abused the victims created a risk of confusion between, and misidentification of, the various perpetrators. . . . [Therefore] precluding cross-examination on this possibility [of confusion] violated his right to confrontation." Id., 55.[27] The trial court excluded the evidence and we affirmed the trial court's judgment.

*Kulmac* is distinguishable from the present case, however. The facts of *Kulmac* indicate that the two victims were subjected to a series of sexual assaults by the defendant over a span of two years, from 1985 to 1987.[28] Id., 51. The other alleged abuse did not begin until 1987. Furthermore, the victims in *Kulmac* were

---

[27] "Under General Statutes § 54-86f (1), evidence of the victim's prior sexual conduct may be admitted to identify the perpetrator of an alleged sexual assault if, for example, the question of identification hinges upon the source of semen or a pregnancy. The purported risk of misidentification in this case is not of that kind." *State* v. *Kulmac*, supra, 230 Conn. 55 n.10.

[28] During the sexual assaults, "[t]he defendant typically fondled the victim's breasts and vaginal area . . . and then proceeded to acts of intercourse, including vaginal penetration by the defendant's fingers or penis." *State* v. *Kulmac*, supra, 230 Conn. 50.

ages fourteen and fifteen at the time of trial; id., 49; an age at which most young adults are less likely to be confused over an individual's identity and are capable of understanding matters of a sexual nature. According to the trial court, neither victim appeared confused when identifying the defendant as their abuser. "Whether there is a sufficient basis for a claim that a witness is confused, so as to permit cross-examination that would otherwise be inadmissible, is a question of fact that is properly left to the discretion of the trial court." Id., 55. Thus, in a case where the trial court, after observing extensive cross-examination, "explicitly found that [a] victim [did not appear] confused, and that any abuses committed on [the victim] were too remote in time from the abuses at issue in the trial to cause confusion," exclusion of the evidence would be justified. Id. In *Kulmac*, the victims were old enough to understand and clearly articulate the identity of their abuser. J., on the other hand, was significantly younger than the victims in *Kulmac*. A child of preschool age is much more likely to confuse the identity of her abuser due to the psychological trauma of experiencing sexual abuse at such a young age. In the present case, we do not have the same facts that existed in *Kulmac*, nor do we have the same clear-cut observations by the trial court. Instead, we conclude that this case presents a sufficient likelihood of confusion to warrant the defendant's cross-examination of the victim on matters of past sexual abuse. Accordingly, we conclude that *Kulmac* is not controlling in this case.

We look for guidance, therefore, from our sister states. "Other jurisdictions have concluded that evidence of a young victim's sexual history is relevant where the defendant seeks to admit the evidence to show a source for the victim's sexual knowledge. Specifically, these courts found the evidence relevant to rebut the inference that a child victim could not

describe the sexual acts unless the defendant had committed the alleged acts." *State* v. *Grovenstein*, 340 S.C. 210, 217, 530 S.E.2d 406 (App. 2000), and cases cited therein. "A minority of states refuse to admit such evidence on the grounds [that] it is irrelevant, confusing to the jury, and an invasion of the victim's privacy." Id., 218–19, and cases cited therein. The rationale many courts use in justifying their deviation from the strict parameters of rape shield laws is that such evidence is allowable where a victim's sexual conduct is "offered for a purpose other than to attack the victim's morality." Id., 216, citing *State* v. *Lang*, 304 S.C. 300, 301, 403 S.E.2d 677 (App. 1991). This policy is safeguarded by our continued adherence to the rules of evidence, as prescribed by rule 403 of the Federal Rules of Evidence, which provides that, even when such evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *State* v. *Porter*, 241 Conn. 57, 164, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

The defendant cites *State* v. *Pulizzano*, supra, 155 Wis. 2d 633, as an appropriate standard for us to follow. In *Pulizzano*, the defendant was charged with, and convicted of, four counts of first degree sexual assault after her nephew, M.D., testified that she had had sexual contact with him and three other children, including her own two children and another nephew. The allegations of sexual contact included "fondling, fellatio, [and] anal penetration with an object . . . ." Id., 640–41. At trial, the court excluded expert testimony offered by the defendant that M.D. had suffered a similar sexual assault in the past, the facts of which also included an " 'older' woman" and three men committing "fondling

and 'sodomy of the penis' . . . and [possibly] anal pen-
etration . . . ." Id., 639. The court rejected the defen-
dant's request to introduce the evidence of the prior
sexual assault for the purpose of establishing an alterna-
tive source for the victim's sexual knowledge. Id., 640.
Unable to establish a defense without the "alternative
source of sexual knowledge" theory, the defendant was
convicted on all counts, and she appealed. "The [C]ourt
of [A]ppeals [reversed the conviction in part] on the
ground that [the defendant's] offer of proof established
a 'good faith' basis to cross-examine M.D. regarding the
prior sexual assault." Id., 642. The Court of Appeals
reasoned that the defendant was denied her constitu-
tional rights to confrontation and compulsory process
when the trial court, pursuant to Wisconsin's rape shield
statute, excluded evidence of a prior sexual assault
experienced by M.D., one of the four complaining wit-
nesses. Id. It held that "under the 'balancing' test set
forth by the United States Supreme Court in *Davis* v.
*Alaska*, [supra] 415 U.S. 308 . . . [the defendant] was
denied her sixth amendment rights because [the Wis-
consin rape shield statute] excluded evidence of the
prior sexual assault"; id., citing *State* v. *Pulizzano*, 148
Wis. 2d 190, 198–202, 434 N.W.2d 807 (App. 1988); which
the Court of Appeals concluded was relevant and mate-
rial to the critical issue that there might be an alternative
source for the victim's sexual knowledge. The state
petitioned the Wisconsin Supreme Court for review on
the issue of whether or not the prior sexual abuse evi-
dence was admissible under the rape shield statute.
*State* v. *Pulizzano*, supra, 155 Wis. 2d 642.

In *Pulizzano*, the Supreme Court of Wisconsin
devised the following test for a defendant "to establish
a constitutional right to present otherwise excluded
evidence of a child complainant's prior sexual conduct
for the limited purpose of proving an alternative source
for sexual knowledge . . . ." Id., 656. "[P]rior to trial

the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." Id. We conclude that in cases involving child sexual abuse the test set forth in *Pulizzano* is a proper standard for determining whether prior sexual conduct should be admissible at trial for purposes of showing an alternative source for the victim's sexual knowledge.[29] We also conclude that this is the

---

[29] Several state and federal courts have reached the same conclusion as the Supreme Court of Wisconsin. See *State* v. *Lujan*, 192 Ariz. 448, 453, 967 P.2d 123 (1998) (prior sexual abuse evidence admissible when offered by defendant "to show motive, propensity, or ability to imagine or fabricate" and not to impugn or cast doubt on victim's moral character); *People* v. *Hill*, supra, 289 Ill. App. 3d 859 (same); *State* v. *Warren*, 711 A.2d 851 (Me. 1998) (subject to traditional rules of relevancy and constitutional balancing test, evidence of past sexual abuse admissible to show alternative source of victim's extraordinary sexual knowledge for purpose of rebutting jury's natural presumption of child victim's sexual naivete); *People* v. *Morse*, 231 Mich. App. 424, 586 N.W.2d 555 (1998) (where prior sexual conduct sufficiently similar to defendant's alleged conduct it may be admitted to rebut inferences that flow from victim's display of unique sexual knowledge); *State* v. *Budis*, 125 N.J. 519, 593 A.2d 784 (1991) (following *Pulizzano* that prior sexual abuse evidence relevant to rebut inference that complainant could not describe details of sexual intercourse if defendant had not committed acts in question); *State* v. *Grovenstein*, supra, 340 S.C. 210 (evidence of child victim's prior sexual experience relevant to demonstrate that defendant not necessarily source of victim's ability to testify about alleged sexual conduct); see also *LaJoie* v. *Thompson*, 217 F.3d 663 (9th Cir. 2000) (evidence of prior rape admissible to show that victim could have learned about sexual acts and male genitalia from source other than defendant accused of rape); *Shaw* v. *United States*, 24 F.3d 1040 (8th Cir. 1994) (defendant's claim that his trial counsel failed to rely on exceptions to rape shield law allowing admission of evidence that would have provided jury with alternative explanation for victim's knowledge of sexual acts required remand to determine admissibility of that evidence); *Grant* v. *Demskie*, 75 F. Sup. 2d 201 (S.D.N.Y. 1999) (recognizing that under appropriate circumstances defendant should be allowed to show that child complainant previously raped in order to offer alternative explanation for child's sophisticated sexual knowledge after excluding evidence because no proffer that prior rape was sufficiently similar).

proper test for determining the admissibility of evidence of prior sexual conduct for purposes of rebutting evidence offered through an expert witness to show that a child exhibits behavior indicative of sexual abuse, by showing an alternative explanation for that behavior. See, e.g., *United States* v. *Bear Stops*, 997 F.2d 451 (8th Cir. 1993) (basic factual details of prior sexual assault admissible when offered to provide alternative explanation for prosecution's persuasive evidence about victim's behavioral manifestations of sexually abused child); cf. *Tague* v. *Richards*, supra, 3 F.3d 1133 (when state offers medical expert to verify that child's physical injury is result of sexual abuse, defendant must be allowed to introduce prior sexual abuse evidence to show that prior abuse may be source of injury).[30]

*Pulizzano* and its progeny illustrate the critical nature of prior sexual abuse evidence in the defendant's effort to rebut the inference that he is the source of J.'s sexual knowledge or behavioral characteristics. "[I]f the jury is not allowed to learn of the [prior sexual] offenses against [the] complainants, then [it] will inevitably conclude that the complainants' highly age-inappropriate sexual knowledge could only come from [the] *defendant* having committed such acts." (Emphasis in original.) *People* v. *Morse*, 231 Mich. App. 424, 426, 586 N.W.2d 555 (1998). Without that evidence, "[t]he inference that [a victim] could not possess the sexual knowledge he [or she] does unless [a defendant] sexually

---

[30] Prior to a determination on the admissibility of the prior sexual abuse evidence, the state filed a memorandum of law supporting the admissibility of expert testimony on the behavior of child abuse victims in order to support its theory that J. had been abused by this defendant. The state argued that the evidence "assists a jury in determining the credibility of the victim's testimony by explaining the typical consequences of the trauma of sexual abuse on a child." The state sought to admit the testimony of Serrano, Murphy and Leventhal as experts in the field. As part of the state's case, Leventhal testified extensively regarding the behavioral characteristics of child sexual abuse victims.

assaulted [him or her] greatly bolsters [a victim's] allegations." *State* v. *Pulizzano,* supra, 155 Wis. 2d 655. "In order to rebut that inference, [the defendant] must establish an alternative source for [the victim's] sexual knowledge . . . [as] a necessary and critical element of [his] defense." Id. "Simply put, the prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered defendant's alleged conduct." *People* v. *Hill,* supra, 289 Ill. App. 3d 859.

We conclude that the trial court did not apply the proper standard in excluding the evidence of prior sexual conduct. We further conclude that if the proper standard had been applied the evidence would have been admitted and the trial could have had a different outcome. Thus, we conclude that exclusion of the evidence was not harmless beyond a reasonable doubt. We recognize, however, that J.'s privacy also must be protected and that "caution should be taken to lessen any further trauma" to her. *State* v. *Pulizzano,* supra, 155 Wis. 2d 656. This can be accomplished by examining the records in camera before admitting the evidence at trial, guarding against excessive cross-examination of J. and eliciting testimony on the issue of prior sexual abuse through other witnesses permitted to testify thereon. See id.; see also *People* v. *Morse,* supra, 231 Mich. App. 437–38; *State* v. *Budis,* 125 N.J. 519, 540, 593 A.2d 784 (1991). Accordingly, we reverse the judgment and remand for a new trial in accordance with this opinion.

## II

The defendant next claims that the trial court improperly allowed detailed constancy of accusation testimony in violation of the rule set forth in *State* v. *Troupe,* supra, 237 Conn. 284. We agree. Although the first issue

is dispositive of this appeal, we address this general issue in order to guide the trial court on retrial.

The constancy of accusation doctrine is well established in Connecticut and recently has been reaffirmed by this court. *State* v. *Kelly*, supra, 256 Conn. 36; *State* v. *Sullivan*, supra, 244 Conn. 645; *State* v. *Troupe*, supra, 237 Conn. 297–98, 303–304; *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994). "Until *State* v. *Troupe*, supra, 304, we permitted witnesses to testify about the details of a victim's accounts of the alleged sexual assault on the theory that, if the victim's story were true, the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear." (Internal quotation marks omitted.) *State* v. *Sullivan*, supra, 645. "In *State* v. *Troupe*, supra, 284, however, we restricted the doctrine so that a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony, and not for substantive purposes. Id., 304." *State* v. *Sullivan*, supra, 645. We limit the testimony of constancy witnesses mainly because "a defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence which . . . generally is not admissible in the trial of crimes other than sexual assault." *State* v. *Troupe*, supra, 302. If every individual to whom the victim reported an assault out of court was permitted to testify about the details of that disclosure, "there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony." Id., 303.

We recognized in *Troupe*, however, that the rule limiting constancy of accusation testimony to time, place and identity, "does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous

utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication. Moreover, we recognize that the defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details. See *State* v. *Kendricks* . . . 891 S.W.2d [597] 603 [Tenn. 1994] (excluding details from state's case-in-chief serves to require 'courts to condition the admissibility of the details of the complaint upon the most fundamental principle governing the admissibility of a prior consistent statement—that the victim's credibility must have already been attacked before the rehabilitative evidence is admissible')." *State* v. *Troupe*, supra, 237 Conn. 304 n.19.[31]

"Notwithstanding our decision in *Troupe*, we recognize that the constancy of accusation doctrine creates a tension between competing well recognized principles. It remains a powerful weapon in the state's arsenal to secure justice for victims of sexual assaults. It also, however, constitutes a potential threat to the accused's right of confrontation under the sixth amendment to the constitution of the United States and under article first, § 8, of the constitution of Connecticut. To resolve this tension, the defendant must be allowed an adequate opportunity to cross-examine constancy of accusation witnesses. Such cross-examination properly includes questioning the witness not only about the victim's

---

[31] The constancy of accusation doctrine deals with hearsay testimony recitations of a victim's account of an assault. "An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998).

report of the present charge, but also about the victim's prior false statements, to that witness, that tend to undermine the credibility of the victim's present complaint." *State* v. *Sullivan*, supra, 244 Conn. 645–46.

In light of these principles, we reject the state's argument that the constancy of accusation testimony properly was admitted at trial in this case. Prior to trial, the state filed a memorandum of law in support of the constancy of accusation witnesses it intended to offer at trial. In that memorandum, the state argued that the trial court should allow the detailed testimony of Serrano, Lumb and Murphy as constancy of accusation witnesses. The state relied upon the language of footnote 19 of *State* v. *Troupe*, supra, 237 Conn. 304, in seeking admission of the detailed testimony. The state argued that, because "the defense conducted a very lengthy and exhaustive cross-examination of [J.] . . . exposing the details of her disclosure . . . inconsistencies, and contradictions in her testimony . . . [and] examined her in areas of delay, motive, behavior and bias," that the state was "now permitted to bring in the entire details of her disclosures to the constancy witnesses under the Doctrine of Prior Consistent Statements," for the limited purpose of ascertaining the credibility of J.'s own testimony. The defendant opposed the state's position arguing that detailed constancy of accusation testimony should not be admitted because it was being offered to prove the truth of the matter asserted, e.g., that the defendant was the sole perpetrator of sexual abuse committed against J. The defendant asserted that the state's "prior consistent statement" argument failed because cross-examination did not raise any significant inconsistencies in J.'s testimony, but simply showed some confusion on matters also raised on direct examination. In fact, the defendant had little success cross-examining J. on sexual matters owing to the vague nature of her answers and her gen-

eral lack of cooperation when addressing questions of a sexual nature.

The trial court, however, allowed the state to offer detailed testimony through its constancy witnesses. The trial court held that "the state [could] use detailed information in its constancy of accusation testimony only to the extent that the details . . . would be the result of a prior consistent statement of [J.] that . . . is directly inconsistent with the statement made by [J.] during her videotaped testimony." The trial court allowed the constancy testimony for the sole purpose of rehabilitating J. under the "prior consistent statement" exception to the rule against hearsay. We conclude that this holding was improper under the facts of this case.

Because the defendant was precluded from alluding to prior sexual conduct, he did not have a meaningful opportunity to attack J.'s credibility on cross-examination, but was limited to questioning J. as to her memory of the details of the abuse, rather than her memory of the abuser. Our review of the record satisfies us that the inconsistencies in her testimony were insignificant and did not justify the repeated use of detailed constancy of accusation testimony for rehabilitation purposes. The state should not have been permitted to rehabilitate J. to prove the truth of her testimony against the defendant where the defendant was prevented from offering evidence that might prove that she was confused about who committed the sexual abuse in the first instance. In sum, the state should not have been permitted to rehabilitate J. through constancy witnesses where: (1) any attack on J.'s credibility was precluded by the exclusion of the evidence of prior sexual abuse; and (2) even if the defendant did attempt to attack J.'s credibility, any inconsistencies elicited during cross-examination were insignificant. As a result of the trial court's improper admission of the constancy testimony, the multiple recitations of the substantive

allegations by the constancy witnesses proved to be far more prejudicial than probative, especially since J.'s credibility was virtually intact at the end of the defendant's cross-examination. Id., 297–99. The state's constancy of accusation witnesses, therefore, should have been limited by the rule in *State* v. *Troupe*, supra, 237 Conn. 304, which permits testimony as to the "fact and timing of the victim's complaint . . . [e.g.] the time and place of the attack or the identity of the alleged perpetrator." Id. We do not, however, pass judgment on whether or not the detailed testimony of the constancy of accusation witnesses would be admissible on retrial. The detailed testimony offered by the constancy of accusation witnesses, although inadmissible in the first trial, may be admissible on retrial if it satisfies an exception to the rule against hearsay, as established in *State* v. *Troupe*, supra, 304 n.19. That determination will be governed by the discretion of the trial court on remand.

We conclude that the trial court improperly precluded the defendant from presenting evidence of the victim's past sexual abuse. We also conclude that the trial court improperly allowed the detailed testimony of the three constancy of accusation witnesses offered by the state in violation of the rule limiting such testimony set forth in *State* v. *Troupe*, supra, 237 Conn. 304.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.