STATE OF CONNECTICUT *v.* RONALD VUMBACK, JR.
(AC 21133)

Foti, Flynn and O'Connell, Js.

Argued November 29, 2001—officially released January 25, 2002*

* January 25, 2002, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Timothy P. Pothin,* with whom, on the brief, was *Hugh F. Keefe,* for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Ronald Vumback, Jr., appeals from the judgment of conviction, rendered after a trial to the court, of sexual assault in the first degree in violation General Statutes § 53a-70 (a) (1) and (2), attempt to commit to sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1) and (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and risk of injury to a child in violation of General Statutes § 53-21. On appeal, the defendant challenges the trial court's denial of his motion for a bill of particulars and the admission of certain evidence. We affirm the judgment of the trial court.

The court found the following facts. The victim lived with her divorced mother in Wallingford. The victim was six years old in 1990 when her mother met the defendant. In July, 1991, the defendant began living with the victim's mother, the victim and her sister, and the victim's grandmother. The victim's mother and the defendant married in 1992 and had a child of their own in 1995.

From approximately June, 1990, through July, 1996, the defendant repeatedly sexually abused and attempted to sexually abuse the victim. The sexual abuse and attempted sexual abuse occurred in the family home. On July 11, 1996, the victim's mother took the

victim, who was then twelve years old, to a physician's office for treatment of a vaginal rash. Mary Peterson, a certified nurse practitioner, saw the victim and preliminarily diagnosed that the rash was likely a manifestation of the herpes virus. On July 17, 1996, the results of a vaginal culture taken from the victim on July 11, 1996, confirmed Peterson's preliminary diagnosis.

While in the physician's office on July 17, 1996, the victim's mother informed Peterson that it was the defendant who had transmitted the herpes virus to the victim.[1] The victim explained to Peterson that the defendant had been sexually abusing her for the last six years. In response, Peterson contacted the department of children and families. The victim now resides with her biological father.

The state filed five separate informations. Each information stated that the defendant was accused of offenses against the victim and that such offenses occurred on "divers dates between approximately June, 1990, through July, 1996 . . . ." They further stated that the offenses occurred at the family home and listed the address of that residence. Subsequent to the state's filing its last information, the defendant filed a motion for a bill of particulars, which the court denied. The defendant was subsequently found guilty of the charges against him, and this appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court abused its discretion when it denied his motions for a bill of particulars and for a new trial because the charges against him lacked sufficient particularity. The defendant claims that this denial violated his due process right to

[1] At trial, however, the victim's mother asserted that the defendant was innocent and that the victim had lied about the entire six year period during which she was repeatedly sexually abused.

notice of the charges against him and that such denial prejudiced his defense. Specifically, the defendant asserts that the state's failure to provide specific dates of the charged offenses violated his constitutional right to a fair trial. We are not persuaded.

"[T]he denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be overturned only upon a clear showing of prejudice to the defendant. . . . A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information." (Citation omitted; internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 653, 607 A.2d 355 (1992).

The defendant asks this court to determine whether the trial court's denial of his motion for a bill of particulars, in the absence of specific dates in the state's information, denied him his due process right to notice of the nature of the charges against him. In support of this claim, the defendant makes various overlapping assertions, but essentially argues that the state failed to apprise him of the nature of the charges against him because the state failed to provide the defendant with the "dates, times and places" of the offenses charged. The defendant further argues that the inexactness of the state's allegations precluded him from presenting an alibi defense.

Our Supreme Court has held numerous times that "[t]he state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment [to] the United States constitution nor article first, § 8, of the Connecticut constitution requires that the state

choose a particular moment as the time of an offense when the best information available to the state is imprecise." (Internal quotation marks omitted.) *State* v. *Laracuente*, 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988).

In *State* v. *Blasius*, 211 Conn. 455, 559 A.2d 1116 (1989), the state charged the defendant with sexual abuse that it alleged occurred over approximately a six month period. Our Supreme Court held that the state did not breach its duty to inform the defendant of the nature of the charges against him because the state did not know to a "reasonable certainty that the [offenses were] committed within a narrower time frame than that provided in the [information] . . . ." (Internal quotation marks omitted.) Id., 461.

In *State* v. *Saraceno*, 15 Conn. App. 222, 234–35, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988), the state, "to the best of its ability," identified in a substitute information the time and date of when the charged offenses of sexual assault occurred. We held that "[t]he general rule in Connecticut is that [t]ime is not an essential ingredient of the crime of [sexual assault]." (Internal quotation marks omitted.) Id., 236. Furthermore, we noted that there was no evidence that the state knew the precise dates of the offenses and deliberately withheld them from the defendant. Id. Had that been the case, "the defendant's claim . . . would [have been] more convincing." (Internal quotation marks omitted.) Id.

In *State* v. *Spigarolo*, 210 Conn. 359, 363, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), the information alleged that the defendant committed the crimes of sexual assault and risk of injury to a child between October, 1984, and January 3, 1985. Our Supreme Court noted that "[i]t

would have been virtually impossible to provide the many specific dates upon which the acts constituting the offenses occurred. . . . The reluctance of the court to force the state to furnish the exact dates of the many continuing acts of the defendant during the . . . period covered by the information and which were claimed, in toto, to have constituted [the charged offenses] was shown to be clearly reasonable by the testimony of the trial."[2] (Citation omitted; internal quotation marks omitted.) Id., 386–87.

In this case, the record shows that the state was merely aware of possible dates on which the offenses might have occurred, but that it chose not to plead them in its final information because those dates were unsubstantiated by the evidence. For example, the information filed on March 7, 2000, pinpointed a ten day window, from July 5 to 15, 1996, during which some of the offenses might have occurred. The final information, however, did not include those dates because, as the record demonstrates, the information was imprecise. Before ruling on the defendant's motion for a bill of particulars, the court asked the assistant state's attorney about his knowledge of specific dates. The assistant state's attorney responded, "I cannot give the defendant anything I don't have." The record supports the assertion that the state did not have knowledge of the specific dates.

At trial, the victim's testimony was inconsistent in various respects. The victim testified that she told Peterson that the defendant sexually assaulted her on July 3, 1996. Just moments later, she testified that she did not tell Peterson that she had been sexually assaulted on that date. The victim was otherwise unable

---

[2] The court in the present case held that while the victim's testimony "contained inconsistencies in various respects, [it found] her basic story of sexual abuse by the defendant to be credible."

to pinpoint any specific dates throughout the six year time period ranging from June, 1990, to July, 1996. It is reasonable to conclude, on the basis of the record, that the state had imprecise information regarding the exact timing, or a narrower time frame, of the sexual assaults and necessarily omitted such dates from its final information.

The record reveals that the state's best information regarding the exact times of the charged offenses was imprecise. On the basis of the information available to it, the state reasonably and to the best of its ability set forth the time period of the charged offenses.[3] The state did not breach its duty to disclose information to the

---

[3] Because we conclude that the state neither possessed reasonably precise information regarding more specific dates nor breached its duty to provide such dates, we likewise conclude that the defendant has not suffered any harm. Alternatively, were we to assume that the state had access to reasonably certain information or that the court abused its discretion when it denied the defendant's motion for a bill of particulars, we nevertheless would conclude that the defendant has failed to show any prejudice that resulted from the court's denial of his motion. "To establish prejudice, the defendant must show that the information was necessary to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information. . . . [T]his court has on numerous occasions adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged." (Citations omitted; internal quotation marks omitted.) *State* v. *Kyles*, supra, 221 Conn. 654.

In the present case, before the trial began, the defendant had access to the same information concerning the alleged dates of the charged offenses as did the state. The defendant cannot now claim that he was unaware of the specific dates omitted from the state's final information because he had access to such information through discovery. See *State* v. *Madagoski*, 59 Conn. App. 394, 404–405, 757 A.2d 47 (2000), cert. denied, 255 Conn. 924, 767 A.2d 100 (2001).

Additionally, the defendant has not demonstrated that such information was necessary to his defense. The focus of his theory of defense was that the victim lied about the entire six year period in which she claimed that he had sexually abused her. We are not persuaded by the defendant's assertion that information regarding specific dates within a two week period that occurred in the last month of a six year time frame was "necessary" to his defense. *State* v. *Kyles*, supra, 221 Conn. 654.

defendant because it did not have such information. The court acted within its sound discretion when it denied the defendant's motion for a bill of particulars. Because we reach this conclusion, we likewise conclude that the court's ruling did not cause the defendant to suffer harm and that he is not entitled to a new trial.

In addition, the defendant asserts that he was impermissibly precluded from presenting an alibi defense by the state's inability to provide exact dates of the offenses. Our Supreme Court has rejected this precise claim several times. See *State* v. *Evans*, 205 Conn. 528, 535, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988). "That a defendant may offer an alibi defense is a factor to be considered by the court in deciding whether to grant a motion [for a bill of particulars], but an alibi defense does not create a per se requirement that the state limit the times in the information more narrowly than the evidence available warrants." (Internal quotation marks omitted.) *State* v. *Spigarolo*, supra, 210 Conn. 387. On the basis of *Evans* and our previous discussion in this opinion, we conclude that the defendant was not impermissibly precluded from presenting an alibi defense by the state's inability to provide exact dates of the offenses.

II

The defendant next claims that the court improperly allowed into evidence detailed constancy of accusation testimony in violation of *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), and that such testimony caused him substantial prejudice. The defendant claims that the court improperly allowed constancy of accusation witnesses to testify as to the "specifics" of the victim's complaint. We do not agree.

Because constancy of accusation testimony is evidentiary in nature, a trial court's admission of such testimony will be reversed on appeal only where there has

been an abuse of discretion and a showing by the defendant that such abuse has caused him substantial prejudice or injustice. See *State* v. *Beliveau*, 237 Conn. 576, 592, 678 A.2d 924 (1996).

The defendant has asked this court to determine whether the testimony of the state's constancy of accusation witnesses exceeded the boundaries of admissibility established by our Supreme Court in *Troupe*. He alleges that the court allowed into evidence the testimony of Peterson, the certified nurse practioner who had examined the victim; Christina King,[4] the arresting officer from the Wallingford police department; Shelly Glaser, a social worker for the department of children and families; and the victim's grandmother concerning the substantive details of the offenses charged, rather than for any permissible corroborative purpose.

Constancy of accusation testimony is deeply rooted in Connecticut common law. See *State* v. *Rolon*, 257 Conn. 156, 187, 777 A.2d 604 (2001); *State* v. *Troupe*, supra, 237 Conn. 294–97. In *Troupe*, our Supreme Court limited the common-law rule,[5] holding that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." *State* v. *Troupe*, supra, 304.

---

[4] Both the defendant and the state refer to King by her former last name, Hill.

[5] See *State* v. *Troupe*, supra, 237 Conn. 297; *State* v. *Kinney*, 44 Conn. 153 (1876); *State* v. *De Wolf*, 8 Conn. 93, 100 (1830).

Furthermore, "[i]n determining whether to permit [constancy of accusation] testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant. . . . [C]onstancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 60 Conn. App. 562, 573, 761 A.2d 766 (2000), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001). Our Supreme Court has reaffirmed *Troupe*'s limitation on the admissibility of constancy of accusation testimony on several occasions. See *State* v. *Rolon*, supra, 257 Conn. 187; *State* v. *Sullivan*, 244 Conn. 640, 645, 712 A.2d 919 (1998); see also *State* v. *Troupe*, supra, 237 Conn. 297–98, 303–304; *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994).

This court, as well, has reviewed numerous trial court decisions in light of *Troupe*. In *State* v. *Orhan*, 52 Conn. App. 231, 243, 726 A.2d 629 (1999), we held that "[t]he controlling language from *Troupe* does not limit the identifying information that may be provided. It limits only the extent of the information provided. Our Supreme Court merely gave examples of how a sexual assault might be identified; it did not hold that that was the only testimony that could be provided." See *State* v. *Barile*, 54 Conn. App. 866, 872–73, 738 A.2d 709 (1999). In *State* v. *Lisevick*, 65 Conn. App. 493, 508, 783 A.2d 73, cert. denied, 258 Conn. 933, 785 A.2d 230 (2001), we recognized that "[o]ur Supreme Court did not limit the exact terms a constancy of accusation witness could use in her testimony." Most recently, in *State* v. *Williams*, 65 Conn. App. 449, 465, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001), we were confronted with a defendant charged with various counts of sexual abuse based on various actions taken by the

defendant against the victim. We held that "[u]nder *Troupe*, the state is allowed to introduce any constancy of accusation testimony found necessary to associate the victim's complaint with the pending charges." Id. 464–65.

The defendant in this case was charged with various counts of sexual assault. The victim testified as to the details of those sexual assaults[6] and as to the identities

---

[6] The victim testified on direct examination in relevant part as follows:

"[Assistant State's Attorney]: Can you tell us specifically what you told [Peterson] about [an incident of sexual abuse]?

"[Victim]: I told her that [the defendant] had . . . thrown me down on the bed. . . . I told her that I was getting out of the shower and I was— and [the defendant] threw me down on his bed and tried to have intercourse with me.

\* \* \*

"[Assistant State's Attorney]: What do you mean that he tried to have intercourse with you?

"[Victim]: He tried to put his penis inside of me.

"[Assistant State's Attorney]: Where inside of you?

\* \* \*

"[Victim]: In my vagina.

\* \* \*

"[Assistant State's Attorney]: Did he touch you in any other way on that occasion?

"[Victim]: He tried to touch my breasts.

\* \* \*

"[Assistant State's Attorney]: And did he touch your—did he touch his penis to any part of your body?

"[Victim]: Yes.

"[Assistant State's Attorney]: What part of your body?

"[Victim]: My vagina."

The victim further testified as to the kind of sexual abuse she suffered over the six year period in relevant part as follows:

"[Assistant State's Attorney]: In what manner did the defendant touch you?

"[Victim]: In a sexual way?

"[Assistant State's Attorney]: Yes.

"[Victim]: Yes. He would try to touch my breasts and try to make me . . . [p]ut my mouth on his penis, and try to have intercourse with me.

"[Assistant State's Attorney]: Using what?

"[Victim]: His penis.

"[Assistant State's Attorney]: Did he ever have intercourse with you using his penis?

"[Victim]: No.

of those to whom she reported such incidents. The state, thereafter, corroborated the victim's testimony with the testimony of four additional witnesses.

Peterson's testimony corroborated the victim's testimony that the defendant tried to put his penis inside of her vagina after she came out of the shower. Peterson testified, over the defendant's objection, that the victim told her that "two weeks prior to the [victim's] visit [to her] office . . . [the victim] was getting out of the shower and . . . her stepfather approached her and attempted to put his penis in her and tried to kiss her." Peterson's testimony, therefore, supported the victim's direct testimony and was permissible to corroborate that testimony.

"[Assistant State's Attorney]: Did he ever put his penis in your mouth?
"[Victim]: No.
"[Assistant State's Attorney]: Did he try?
"[Victim]: Yes.
                         * * *
"[Assistant State's Attorney]: Did there ever come a time when he put anything inside of your vagina?
"[Victim]: Yes.
                         * * *
"[Assistant State's Attorney]: How often between 1990 and 1996 did these incidents happen?
"[Victim]: About three or four times a week.
                         * * *
"[Assistant State's Attorney]: What did he put inside your vagina?
"[Victim]: His fingers.
                         * * *
"[Assistant State's Attorney]: What would you be doing when the incidents happened, or just before the incidents happened?
"[Victim]: Most of the time I was getting out of the shower."
On cross-examination, defense counsel elicited information about acts of cunnilingus:
"[Defense Counsel]: Did [the defendant] ever put his mouth on your vagina?
"[Victim]: He tried to, yes.
"[Defense Counsel]: I didn't ask you if he tried to. I asked you if he did.
"[Victim]: Yes.
"[Defense Counsel]: He did. Is that your answer?
"[Victim]: Yes."

The court also heard Glaser's testimony. Glaser testified, over the defendant's objection, that the victim told her "she had been sexually molested in her vaginal area and her breasts by the defendant. [The victim] also explained oral sex performed by the defendant on her. [The victim] also explained that [the defendant] attempted to put his penis inside of her." Like Peterson's testimony, Glaser's testimony supported the victim's direct testimony and was permissible to corroborate the victim's testimony on direct and cross-examination.

Additionally, King's testimony further corroborated the victim's direct testimony. King testified, over the defendant's objection, that the victim complained that the defendant "had asked her to touch his penis . . . [and] had attempted to . . . perform oral sex on her and touch her breasts . . . [and that the defendant also] attempt[ed] to put his penis between her legs." King stated further that the victim told her that the sexual assaults usually "occurred when [the victim] was leaving the shower to go get her clothes." King's testimony, like that of Peterson and Glaser, was corroborative of the victim's testimony on direct and cross-examination.

Finally, the court had the benefit of testimony from the victim's grandmother. The grandmother testified, over the defendant's objection, as to what she overheard the victim say to one of the victim's friends while they were seated in the back of the grandmother's car. She testified[7] that she heard the victim say, "[The defendant] asked me to put his penis in [my] mouth . . . ."

The defendant argues that the court improperly admitted the testimony of the victim's grandmother because it cannot be classified as constancy of accusa-

---

[7] Prior to the grandmother's testimony, the victim testified as to the facts of the sexual assaults and attempted sexual assaults, and identified her friend as the person to whom she reported the incident.

tion testimony. He argues that testimony can qualify as constancy of accusation testimony only if it was elicited from a person to whom the victim intentionally and directly reported an alleged sexual assault. We recognize that our case law discusses such testimony in that context; see *State* v. *Rolon,* supra, 257 Conn. 187; *State* v. *Troupe,* supra, 237 Conn. 304; but we do not, however, read *Troupe* as creating such a defined limitation. On the basis of our reading of *Troupe* and its progeny, we conclude that the distinction that the defendant attempts to draw in this regard is of no consequence. The import of such constancy of accusation testimony is that the victim made prior allegations of abuse, not the identity of the person or persons to whom such statements were made. We decline, therefore, under the present circumstances, to hold that the court improperly admitted the testimony of the victim's grandmother and we hold that it falls within the purview of constancy of accusation testimony. The court properly admitted the grandmother's testimony because the grandmother heard from the victim's mouth her statement of abuse and, thus, her testimony was constancy of accusation testimony, which served to corroborate the victim's direct testimony.

After a careful review of the evidence, we conclude that the court properly admitted all of the challenged constancy of accusation testimony because such testimony corroborated the victim's accusations and associated the defendant with the pending charges. The defendant has shown neither that the court abused its discretion in admitting the constancy of accusation testimony nor that he has been substantially prejudiced by the admission of such testimony. The court, therefore, acted within its sound discretion and did not exceed the limitations set forth in *Troupe.*

### III

The defendant next claims that the court improperly permitted the state to elicit expert testimony without

requiring the state to make an adequate showing of reliability. The defendant argues that the court improperly concluded that the evidence satisfied the standard set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), as adopted by our Supreme Court in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and codified in the Connecticut Code of Evidence § 7-2, which requires a trial court to make a threshold inquiry into the admissibility of scientific evidence.[8]

Underlying the defendant's claim is the presumption that the testimony of John Leventhal, professor of pediatrics at the Yale Medical School and attending pediatric physician at Yale-New Haven Hospital, constitutes "scientific evidence." Specifically, the defendant argues that the state offered, and the court improperly admitted, Leventhal's testimony to explain that victims of sexual abuse often lack precision in their allegations and to show the common factors regarding a victim's delay in reporting sexual abuse. We are not persuaded.

We first note our standard of review. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a

---

[8] Subsequent to *Porter*, the United States Supreme Court extended a trial court's "gatekeeping" function under the *Daubert* standard to testimony involving " 'technical' " or " 'other specialized' knowledge" of the witness. *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). We note that the Connecticut Code of Evidence "takes no position" on the United States Supreme Court's extension of the *Daubert* standard. See Conn. Code Evid. § 7-2, commentary. Although we do not apply such an extension in this case, we note that the trial court held that Leventhal's testimony satisfied the threshold inquiry of *Daubert*. On the basis of the court's own experience and the witness' testimony, the court was satisfied with the scientific validity of Leventhal's position and found his testimony to be helpful. See *State* v. *Porter*, supra, 241 Conn. 89–90. On the basis of our decision in part III of this opinion, we do not reach the question of whether the trial court properly made such a conclusion.

clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 326, 746 A.2d 761 (2000).

The defendant has asked this court to determine whether the trial court properly concluded that Leventhal's reasoning or methodology was scientifically valid. The defendant contends that Leventhal's testimony was based on "nothing more than mere speculation" and, as such, fails to comport with the *Daubert* standard.

It is first necessary to determine whether such evidence is of the kind contemplated by *Porter* before subjecting it to the *Daubert* standard for admissibility. Stated differently, we must determine whether Leventhal's challenged expert testimony qualifies as " 'scientific evidence.' " See *State* v. *Reid*, 254 Conn. 540, 546, 757 A.2d 482 (2000).

In *Porter*, our Supreme Court "explicitly adopted the *Daubert* test to determine the admissibility of scientific evidence . . . [but it] did not explicitly overrule Connecticut precedent regarding the evidence to which such a test should apply."[9] (Citation omitted.) Id.; see *State* v. *Porter*, supra, 241 Conn. 68; see also *State* v. *Borrelli*, 227 Conn. 153, 163, 629 A.2d 1105 (1993); *State* v. *Hasan*, 205 Conn. 485, 489, 534 A.2d 877 (1987). Courts apply the *Daubert* standard only when such testimony involves "innovative scientific techniques . . . ." (Internal quotation marks omitted.) *State* v. *Reid*, supra, 254 Conn. 546. To determine if such a technique exists, we look to see whether the trier of fact is "in a position to weigh the probative value of

___

[9] Prior to *Porter*, Connecticut used the standard set forth in *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923), for the admissibility of scientific evidence. Subsequent to *Porter*, the *Frye* standard was replaced with the *Daubert* standard.

the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge." (Internal quotation marks omitted.) Id., 547, quoting *State* v. *Hasan*, supra, 491. Furthermore, we determine if the testimony is based on obscure scientific theories that have the "potential to mislead [the trier of fact] awed by an aura of mystic infallibility surrounding scientific techniques, experts and the fancy devices employed." (Internal quotation marks omitted.) *State* v. *Hasan*, supra, 490. If an expert's testimony concerns a method, "the understanding of which is accessible to the [trier of fact] . . . and the value of the expertise lay in its assistance to the [trier of fact] in viewing and evaluating the evidence," the testimony is not scientific even though an expert's skill and training are based on science. (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, supra, 547;[10] see *State* v. *Hasan* supra, 491.

On the basis of our review of relevant case law, Leventhal's testimony did not rise to the level of scientific evidence. We recognize that no appellate court in this state has held that the technique for evaluating the behavior of sexually abused children is not "scientific evidence." In *Borrelli*, however, our Supreme Court held that expert testimony concerning battered wom-

---

[10] Additionally, although *State* v. *Spigarolo*, supra, 210 Conn. 359, is not conclusive on the issue of what constitutes scientific evidence, we note that where the defendant has sought to impeach the testimony of the minor victim based on inconsistencies, partial disclosures, or recantations relating to the alleged incidents, the state may present expert opinion evidence that such behavior by minor sexual abuse victims is common. See id., 380. Thus, satisfaction of the *Daubert* standard for admissibility is not necessary under such circumstance as long as the testimony "[meets] the prerequisite of being 'helpful' to the [court]." *State* v. *Borrelli*, supra, 227 Conn. 164.

In the present case, defense counsel sought to impeach the victim based on various inconsistencies. Because our determination of this issue hinges on whether Leventhal's testimony was scientific, *Spigarolo* is not fully dispositive of the issue.

an's syndrome was not scientific because it was based on the expert's "observations of a large number of battered women through the lens of his educational background and experience" and that the purpose of the testimony was "to provide an interpretation of the facts." *State* v. *Borrelli*, 227 Conn. 165.

Further examination of Leventhal's testimony reveals that it was very similar to the nonscientific expert testimony admitted in *Borrelli*. Like the expert in *Borrelli*, Leventhal did not personally examine the victim. Although he formed a personal opinion as to the defendant's ultimate guilt and testified that there were signs that the victim had herpes before she was diagnosed, he did not offer any opinion as to whether the victim in fact had been sexually abused. Leventhal "did not apply any scientific instrument or test to specific evidence in the case" and he "did not apply any scientific test to a hypothetical question posed by the state." Id., 164–65.

Leventhal merely explained, on the basis of his experience and education, how children subjected to sexual abuse might act under certain circumstances. Additionally, his method of studying and comparing the allegations of numerous child victims of sexual abuse based on his education and experience was accessible to the court, and the value of his testimony was rooted in its assistance to the court in viewing and evaluating the evidence.

We find, on the basis of the circumstances of this case, that the court was in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge, and that this evidence was not based on obscure scientific theories that were potentially misleading to the trier of fact. We conclude, therefore, that,

like the testimony in *Borrelli*, Leventhal's testimony was not scientific. As a result, the court was not required to determine whether his testimony satisfied the *Daubert* standard for admissibility. Because we conclude that Leventhal's testimony was not scientific, the court acted within its sound discretion in admitting his testimony.

## IV

The defendant's final claim is that the court's evidentiary errors deprived him of a fair trial. The defendant claims that the court's admission of constancy of accusation testimony, coupled with Leventhal's expert testimony, constituted reversible, cumulative evidentiary error. Specifically, he argues that the court allowed the state's constancy of accusation witnesses to testify "mechanically" and "repeatedly" as to the details of the victim's allegations, and that Leventhal's testimony was speculative. We do not agree.

Because we have concluded that the trial court properly admitted the challenged constancy of accusation testimony, along with Leventhal's expert testimony, no error exists.

The judgment is affirmed.

In this opinion O'CONNELL, J., concurred.

FLYNN, J., dissenting. I respectfully dissent and would reverse the conviction and order a new trial because I believe that a person accused of a crime is entitled under our state and federal constitutions to the date or approximate dates within which the accused is said to have committed a crime if that information is known to the child victim and thus available to the state. U.S. Const., amend. VI, amend. XIV; Conn. Const., art. I, § 8. While we recognized in *State* v. *Saraceno*, 15 Conn. App. 222, 237, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988), that child

victims may have difficulty recalling dates of sexual assaults, we did not relieve the prosecution of the duty of asking such a victim what she recalls. It is clear from this victim's testimony that she was never asked to pinpoint the dates of her assaults until her cross-examination and when asked was able to pinpoint the month and year in which she said they began. The prejudice to this defendant was obvious. He was required to defend against an unparticularized information, which would permit a conviction for occurrences within a six year time period, when a narrower time frame than that provided in the information was available. See *State* v. *Blasius*, 211 Conn. 455, 461, 559 A.2d 1116 (1989); *State* v. *Stepney*, 191 Conn. 233, 242, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

If the state did not possess the information, as it claims, it is because it never asked the child victim for it. It is one thing to hold, as did our Supreme Court in *State* v. *Stepney*, supra, 191 Conn. 241–42, that a seven hour time frame as to when the murder victim died was reasonable where a more limited and precise time frame could not be determined by the state.[1] It is quite another to burden a defendant with defending against a six year time period, as has happened here, when a more particular and limited time frame could have been alleged. If a six year time frame is not a burden of "sufficient magnitude" prejudicing the defendant's ability to present a defense, it is unlikely that there will ever be one.

---

[1] The *Stepney* court held that even if the state could have narrowed the seven hour time frame during which the *Stepney* victim's murder occurred, the burden of defending against an information alleging that the murder occurred within a seven hour time frame was not of "sufficient magnitude to prejudice his ability to present an adequate defense." *State* v. *Stepney*, supra, 191 Conn. 242.