STATE OF CONNECTICUT *v.* KERMIT ELLISON
(AC 21823)

Dranginis, West and Hennessy, Js.

592

Argued February 26—officially released September 23, 2003

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Paul E. Murray*, state's attorney, *Elizabeth C. Leaming*, assistant state's attorney, *Robin S. Schwartz*, former assistant state's attorney, and *Joy K. Fausey*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Kermit Ellison, appeals from the judgment of conviction, rendered after a jury trial, of two counts of conspiracy to commit risk of injury to a child in violation of General Statutes § 53a-48[1] and General Statutes (Rev. to 1999) § 53-21 (1),[2] two

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb

counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[3] three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[4] and two counts of risk of injury to a child by impairing the morals of a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[5] On appeal, the defendant claims that the trial court (1) improperly determined that the two counts of conspiracy to commit risk of injury to a child younger than the age of sixteen years were separate offenses rather than a single conspiracy, (2) violated his constitutional right against double jeopardy because he was convicted of both sexual assault in the second degree and risk of injury to a child younger than the age of sixteen years, (3) improperly permitted testimonial evidence in violation of the constancy of accusation rule and (4) improperly prohibited him from cross-examining a witness concerning her previous voluntary sexual relationship with one of the men present during the incident at issue.

From the evidence adduced at trial, the jury reasonably could have found the following facts. On January

of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[4] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[5] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class C felony."

4, 1999, the defendant, Howard J. Russell and Kunte Kupe brought three minor girls[6] to a motel in Vernon. The defendant, Russell and Kupe were members of a gang. Kupe and one of the minors, J, were dating at the time of the incident.

The six people entered the motel room, which contained two beds and a separate bathroom. The defendant was sitting on one of the beds with H. The defendant then leaned on H and pushed her down. The defendant then pushed her pants past her hip and penetrated her vagina with his finger. H was moving from side to side in an attempt to make it difficult for the defendant and said, "No, not really," to him. H also told the defendant several times that she had to go to the bathroom. Eventually, H was able to get up and go to the bathroom where she talked to J. H told J that she was scared, and J offered no solutions. H testified that she thought that "bad things [were] going to happen," there was nothing she could do to improve the situation and she could not leave.

H came out of the bathroom and sat on the bed facing a table between the beds. The defendant got on top of her, held her down with his shoulders and pulled her pants down. H wiggled and moved around in an effort to prevent the defendant from penetrating her with his penis. The defendant penetrated H while she said, "Oh, my God," and repeated that she had to go to the bathroom. The defendant told H to relax and said that she was too tense. Eventually, H walked into the bathroom without her pants on.

[6] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Two of the minors, M and J, were fifteen years old, and the third, H, was fourteen years old, at the time of the incident at issue. There was testimony at trial that the girls had informed the defendant, Russell and Kupe of their ages. On January 4, 1999, the defendant was forty-four years old.

H exited the bathroom and put her pants back on. As she was getting dressed, the defendant asked her what she was doing and told her that he was not done. The defendant then told J to get in the other bed with him. At first, J told the defendant that she did not want to have sex with him, but the defendant was becoming mad, and she "had sex because [she] didn't want to get killed." J believed that she had to have sex with the defendant because she did not know what the men would do if she refused. The defendant got on top of J and he penetrated her with his penis.[7]

Later, Russell and the defendant began to discuss a plan to beat up J's brother, T. The three men had learned that T had tried to recruit the girls into the 20 Love gang and had lied about his rank in the gang. The three men had also been told that T had raped his sister, J. When the conversation began, Kupe and J were in the bathroom. When Kupe and J came into the bedroom, he joined in the conversation concerning a plan to beat up T the following day.

The next morning, on January 5, 1999, the three men took the minor girls to the home of Robin Palumbo. Russell asked the minors questions concerning T and wrote down the information they provided. The defendant and Kupe brought T to Palumbo's residence. Russell told the minors to stay in an adjacent room until he called them out. The three men started questioning T about the gang, his rank in the gang and asked if he had raped J. T denied raping J, and then Russell called the minors into the room to confront T. J stated that T had raped her, and T then admitted that he had raped J.

---

[7] It is noted that various other sexual activity occurred in the motel room that did not involve the defendant and is not recited here. On appeal, the defendant does not claim that there was insufficient evidence to support his conviction and, therefore, the other sexual activity is irrelevant to establish whether he had committed the crimes of conspiracy to commit risk of injury to a child and risk of injury to a child by impairing the morals of a child.

The three men, along with some other men at the house, then began to beat T with their fists and feet. They also used free weights and a glass ashtray in the attack. J screamed and the other minors cried, but they did not try to stop the attack. T was bleeding badly from his head and "went to the bathroom on himself." Some of the men drove T somewhere while the minors stayed at the house. When they returned to the house, the defendant, Russell and Kupe then drove the minors home.

On January 13, 1999, H told her school social worker, Mary Bajana about the incident. H thought that Bajana would keep the information confidential, but Bajana was under an obligation to report the incident and informed the authorities. A police community outreach officer, Peter Slocum, then spoke with H and J about the incident, and referred the matter to the police department. H and J then gave statements to Donald Skewes and Steven Chipman, detectives with the Vernon police department. Additional facts will be set forth as they become relevant to the issues in the appeal.

I

The defendant's first claim is that the court improperly determined that the two counts of conspiracy to commit risk of injury to a child younger than the age of sixteen years were separate offenses rather than a single conspiracy. The defendant claims that the two counts related to a single conspiracy and, therefore, his conviction violated the double jeopardy clause of the fifth amendment to the United States constitution. We do not agree.

The following additional facts are relevant to the defendant's claim. In the substitute information and bill of particulars dated September 22, 2000, the defendant was charged in count one with conspiracy to commit risk of injury to a child in connection with the events

that took place in the motel room. Count two charged conspiracy to commit risk of injury to a child related to the events that took place the following day when the defendant and the others beat up J's brother, T. On October 20, 2000, after the state rested its case-in-chief, the defendant filed a motion for a judgment of acquittal. The defendant argued, inter alia, that there cannot be two conspiracies for one ongoing course of conduct. During argument to the court, the state pointed out that there was evidence of a separate agreement and a plan to engage in the beating of J's brother in front of the victims. The court denied the defendant's motion and noted that the events were separate incidents and occurred on different days.

The standard of review to determine whether the defendant's constitutional right against double jeopardy was violated is de novo because it is a question of law. See *State* v. *Tuchman*, 242 Conn. 345, 350–51, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998). The factual findings of the court that determines that issue, however, will stand unless they are clearly erroneous. Id., 351.

"The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. This clause prohibits not only multiple trials for the same offense but also multiple punishment for the same offense. . . . This constitutional provision applies to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy. . . . Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction.

Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Citations omitted; internal quotation marks omitted.) *State* v. *Morris*, 49 Conn. App. 409, 417–18, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed. . . . A single agreement to commit several crimes constitutes one conspiracy. . . . [M]ultiple agreements to commit separate crimes constitute multiple conspiracies." (Citations omitted; internal quotation marks omitted.) *State* v. *Ketchum*, 45 Conn. App. 270, 278, 696 A.2d 987, cert. denied, 242 Conn. 910, 697 A.2d 368 (1997), quoting *United States* v. *Broce*, 488 U.S. 563, 570–71, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

Some of the factors to consider in the context of whether multiple prosecutions are permitted for multiple conspiracies are the participants, the time period, similarity of the crimes, and the existence of common acts, objectives and a common location. See *United States* v. *Korfant*, 771 F.2d 660, 662 (2d Cir. 1985). After reviewing the record, we find that there was ample evidence for the jury to have concluded that there were two separate agreements. The location and time of the incidents varied as correctly noted by the court, and the criminal acts were completely different. There was evidence of separate discussions involving the beating

of J's brother that had nothing to do with the sexual acts that took place at the motel.

The defendant argues that the state's theory was that the victims were forced to watch the beating to prevent them from discussing the events in the motel the previous night. It is true that the state did suggest during closing argument to the jury that one of the reasons to bring the victims to the beating was to keep them silent, but the state also cited other reasons for their presence.[8] When one overt act may assist in the commission of a second conspiracy, the prosecution for two conspiracies is not necessarily precluded when there are separate, independent reasons for committing the overt criminal act. There was evidence of multiple agreements and, therefore, the court's decision that separate conspiracies existed was based on findings of fact that were not clearly erroneous. The defendant's conviction of two separate conspiracies, therefore, did not violate the defendant's constitutional right to be free of double jeopardy. The court correctly applied the law to the facts found.

II

The defendant's next claim is that the court violated his constitutional right against double jeopardy because he was convicted of both sexual assault in the second degree in violation of § 53a-71 and risk of injury to or impairing the morals of a child younger than sixteen years of age in violation of § 53-21.[9] The defendant was

---

[8] The prosecutor stated, in relevant part, during closing argument: "I submit to you that they brought these girls . . . for two reasons. One, to serve as proof of [T's] unauthorized 20 Love activities that he was being punished for, and two, to bear witness to what happens to somebody that messes with them."

[9] The defendant concedes that he did not raise that issue at trial. Our Supreme Court, however, has determined that the issue is reviewable under *State* v. *Golding*, 213 Conn. 233, 238–42, 567 A.2d 823 (1989). See *State* v. *Chicano*, 216 Conn. 699, 704–705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

convicted of two counts of sexual assault in the second degree and risk of injury to a child for incidents involving sexual activity with H. The defendant was also convicted of sexual assault in the second degree and risk of injury to a child for sexual activity involving J. The defendant is not arguing that he should not have been convicted for separate offenses involving separate victims, but that he could not be convicted of both risk of injury to a child and sexual assault as to each victim. The defendant contends that the charges arose from the same incident and that neither offense as charged required proof of a fact that the other did not, as enunciated in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). We do not agree.

"The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, [supra, 284 U.S. 304], which holds: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

"To reach that conclusion, we employ the long established rules of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 232–33, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

We conclude that the elements necessary for a conviction of risk of injury to or impairing the morals of a child are different from the elements necessary for a conviction of sexual assault in the second degree under the *Blockburger* analysis. Pursuant to § 53-21 (2), risk of injury to or impairing the morals of a child involves sexual contact with a child younger than the age of sixteen years "in a sexual and indecent manner likely to impair the health or morals of such child . . . ." Section 53a-71, sexual assault in the second degree, contains no such similar provision. Risk of injury to a child, therefore, contains elements lacking in sexual assault in the second degree. That reasoning is identical to that of previous appellate decisions. See *State* v. *Perruccio*, 192 Conn. 154, 162, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State* v. *McCall*, 187 Conn. 73, 89–92, 444 A.2d 896 (1982); see also *State* v. *Morris*, supra, 49 Conn. App. 416–20. In *Morris*, we stated: "[T]he element of 'sexual contact,' included within the offense of sexual assault in the fourth degree, is not necessarily equivalent to the touching of the private parts of a child in a 'sexual and indecent manner' . . . prohibited by the risk of injury to a child statute. The term 'sexual contact' is defined as 'any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . .' The mental state required for the offense of sexual assault in the fourth degree, therefore, is clearly different from that required for the offense of risk of injury to a child." (Citations omitted.) Id., 419. Although *Morris* concerned sexual assault in the fourth degree and the current case involves sexual assault in the second degree, the rationale is identical. See also *State* v. *McCall*, supra, 89–92. Under the *Blockburger* test, the defendant was not subject to multiple punishments for the same offense.

The defendant further argues that the legislative history supports his contention that both sexual assault in the second degree and risk of injury to a child by impairing the morals of a child constitute the same offense and that the legislature did not intend for an individual to be convicted under both statutes for the same act.

In 1995, § 53-21 was amended to add subdivision (2), which provides that contact with the intimate parts of a child or subjecting the child to contact with the intimate parts of such person in a sexual and indecent manner likely to impair the health or morals of a child is sufficient for a finding of guilt of risk of injury to a child. See Public Acts 1995, No. 95-142, § 1. The defendant argues that the purpose of the amendment was to categorize certain crimes charged under the risk of injury to a child statute as sex offenses. The defendant further argues that because the purpose of the amendment was to create a classification of risk of injury to a child that would fall under the sex offender registration requirements, the legislative intent was identical to that underlying the statute criminalizing sexual assault in the second degree. An examination of the legislative history does not support the defendant's position.

During discussions concerning the aforementioned amendment, Senator Thomas F. Upson stated: "First of all, [the amendment] *creates a new crime. . . . by* having contact with the intimate parts of a child under sixteen, *in a sexual and indecent manner, likely to impair the health or morals of the child.*" (Emphasis added.) 38 S. Proc., Pt. 5, 1995 Sess., p. 1777, remarks of Senator Thomas F. Upson. The legislative history supports our conclusion that a conviction under both risk of injury to or impairing the morals of children and sexual assault in the second degree do not constitute multiple punishments for the same offense because the legislature intended to create a new crime.

## III

The defendant's third claim is that the court improperly permitted testimonial evidence in violation of the constancy of accusation rule. The defendant argues that the court improperly allowed the state to present witnesses whose testimony went beyond that allowed by the doctrine of constancy of accusation as enunciated by our Supreme Court in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996) (en banc). The defendant contends that the repeated testimony corroborating the victims' version of events prejudiced his case. We do not agree.

"Because constancy of accusation testimony is evidentiary in nature, a trial court's admission of such testimony will be reversed on appeal only where there has been an abuse of discretion and a showing by the defendant that such abuse has caused him substantial prejudice or injustice." *State* v. *Vumback*, 68 Conn. App. 313, 321–22, 791 A.2d 569 (2002), aff'd, 263 Conn. 215, 819 A.2d 250 (2003).

According to our Supreme Court, "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. In all other respects, our current rules remain in effect. Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. . . . In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." *State* v. *Troupe*, supra, 237 Conn. 304–305. The *Troupe* court further stated that "the rule

that we adopt today does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication." Id., 304 n.19.

The defendant in this case was charged with various counts of sexual assault, conspiracy to commit risk of injury to a child and risk of injury to a child by impairing the morals of a child. The victims testified as to the details of the incidents and as to the identities of those to whom they reported the incidents. The defendant alleges that the testimony of four witnesses included impermissible details and hearsay. The defendant contends that the testimony of each of those four witnesses was unnecessary to corroborate the victims' story. We will discuss each witness' testimony.

The first witness' testimony that the defendant alleges violated *Troupe* was that of Bajana, a licensed social worker. She testified as to the place and identity of the perpetrators. Bajana testified as to what the victims had informed her concerning their unwillingness to participate in the sexual activity and did not go into the details of the sexual activity, but testified only as to whether the victims had consented. That testimony related directly to the charges filed against the defendant and was not a violation of *Troupe*. See *State* v. *Vumback*, supra, 68 Conn. App. 323–24.

Bajana did not testify as to any specifics that took place in the motel room. Bajana did, however, testify as to each of the victims' reactions and emotional states when she interviewed them. The court had ruled that the constancy of accusation witnesses could be questioned concerning the victims' reaction to the incident because the victims had been impeached as to how they felt and reacted to the incident in addition to being

questioned as to their credibility. We do not find the admission of such testimony to be an abuse of discretion under the facts of the case.

Any testimony concerning the victims' presentation while being interviewed does not fall within the *Troupe* limitations because it is not a detail of the sexual assault, but describes the victims' demeanor while *reporting* the sexual assault. In addition, even the defendant concedes that the central issue in the trial was whether the victims were forced into sexual relations, and the victims were cross-examined concerning that issue. H was questioned on cross-examination extensively about her anxiety during the incident and whether she could have avoided the situation by telephoning for help, calling for assistance or just leaving the group. Clearly, the defense was attempting to impeach her concerning her willingness to participate in the events of the evening. She also was cross-examined concerning her fear of retaliation, and the rational basis of her anxiety was called into question. She was also cross-examined about corroborating her story with the other victims and how much time had elapsed from the event to her reporting it to medical personnel.

J also was questioned about her willingness to participate in sexual relations with the defendant and his friends. Any details concerning the victims' demeanors while reporting the incident fell under the doctrine of prior consistent statements and, therefore, fell outside the parameters set in *Troupe*.

The second witness that the defendant alleges violated the limitations set forth in *Troupe* was Slocum, a police officer assigned as a community outreach officer. Slocum testified as to the date and place of the incident at issue as well as the identity of the perpetrators. Slocum also testified that J was frightened for herself and her boyfriend at the time, Kupe. He also stated that J

was reluctant when he interviewed her concerning the incident. For the reasons stated previously, Slocum's testimony did not violate the limitations set forth in *Troupe*.

The third witness that the defendant alleges violated the limitations set forth in *Troupe* was Skewes, a detective with the Vernon police department. Skewes testified that the victims were fearful of retaliation and described their demeanor during an interview as part of his investigation of the incident. He also testified that the victims had indicated that they unwillingly had engaged in the sexual acts. That testimony was related to the pending charges and was allowed under *Troupe*. See id.

Skewes also testified concerning what the victims had told him with respect to the location of the events preceding the incident and the names of the defendant and his friends. He also gave a description of the motel that was supplied by the victims during the investigation. The investigators used that description to find the exact name and address where the incident took place. That testimony clearly was permissible under *Troupe* as describing the location of the incident and also the investigative techniques. See *State* v. *Troupe*, supra, 237 Conn. 304–305.

The defendant argues that the witnesses' description of events that led to the arrival at the motel and the description of the motel were not permitted by *Troupe*. We do not see that testimony as falling within the prohibition of testifying as to "details surrounding the assault . . . ." Id., 304.

In addition, the record reveals that the victims were extensively cross-examined concerning those events and their accuracy in recalling the time period immediately preceding their arrival at the motel. H was cross-examined concerning the date of the events and about

a prior inconsistent statement concerning where the group went before arriving at the motel. She also was cross-examined on whether the defendant wanted to be dropped off before going to the motel, the lighting in the motel and whether he left the motel for an extended period of time. The implication was that the defendant may not even have been present when the events at the motel took place.

J's accuracy regarding the date of the incident also was questioned on cross-examination, and she was asked why her statement to the police differed from her testimony. M was questioned on whether she had a good memory in relation to the events that took place. In fact, even the constancy of accusation witnesses were cross-examined by the defendant's attorney concerning the sequence of events that took place before the incident at the motel. Such testimony did not fall under the prohibitions set by *Troupe* and was permitted as prior consistent statements.

The fourth witness whose testimony the defendant argues exceeded the boundaries set forth in *Troupe* was Chipman, a detective with the Vernon police department. He testified that J had told him that she had "relented" under pressure to have sexual relations with the defendant. Chipman also testified as to the demeanor of the victims while they were interviewed. The only description of an event that took place within the motel was that J witnessed H having sexual intercourse with the defendant. That testimony related to the charges against the defendant, including risk of injury to a child by impairing the morals of a child. This court has stated that "[u]nder *Troupe*, the state is allowed to introduce any constancy of accusation testimony found necessary to associate the victim's complaint with the pending charges." (Internal quotation marks omitted.) *State* v. *Vumback*, supra, 68 Conn. App. 324. Contrary to the defendant's assertion, Chip-

man did not testify outside the scope that is permitted under *Troupe.*

The defendant also alleges that the testimony concerning the victims' witnessing the beating of T should not have been permitted under *Troupe.* The defendant has interpreted *Troupe* to limit all testimony from constancy of accusation witnesses to the time and place of the incident, even when other crimes have been charged. The defendant's interpretation would not permit witnesses to discuss evidence that would relate to charges other than sexual assault. We do not read *Troupe* to limit testimony concerning potential criminal acts outside the sexual assault as being impermissible. Under the facts of this case, testimony concerning the details of the beating of T had nothing to do with the sexual assault, and the *Troupe* limitations did not apply. The defendant was charged with crimes that fell outside the realm of sexual assault, and the challenged evidence concerned those charges and was not prohibited by *Troupe.*

In addition, a central theme of the defendant's case concerning the charges in relation to the beating of T was that the defendant was not present. Any testimony related to the beating could be considered a prior consistent statement because the victims were cross-examined on whether the defendant was present during the assault on T.

The defendant also argues that the constancy of accusation witnesses' testimony was not required as prior consistent statements to bolster the victims' credibility. He argues that there was no need to rehabilitate the victims after cross-examination because any inconsistencies in their testimony were insignificant. As a result, he claims, material prejudicial to him was admitted that violated the limitations set in *Troupe.* See *State* v. *Rolon,* 257 Conn. 156, 190, 777 A.2d 604 (2001). *Rolon,* however,

concerned impermissible details about the sexual assault after "the defendant had little success cross-examining [the victim] on sexual matters owing to the vague nature of her answers and her general lack of cooperation when addressing questions of a sexual nature." Id., 189–90. The current case is distinguished from *Rolon* in that there was no evidence presented by the constancy of accusation witnesses with respect to the details of the sexual assaults.

After a careful review of the evidence, we conclude that the court did not abuse its discretion when it admitted the challenged constancy of accusation testimony because such testimony corroborated the victims' accusations and associated the defendant with the pending charges. The defendant has shown neither that the court abused its discretion in admitting the constancy of accusation testimony, nor that he has been substantially prejudiced by the admission of such testimony. See *State* v. *Lisevick*, 65 Conn. App. 493, 508, 783 A.2d 73, cert. denied, 258 Conn. 933, 785 A.2d 230 (2001). The court, therefore, acted within its sound discretion and did not exceed the limitations set forth in *Troupe*.

IV

The defendant's fourth claim is that the court improperly prohibited him from cross-examining J concerning her previous voluntary sexual relationship with Kupe.

The following facts are relevant to the defendant's claim. J testified that she had consensual sex with Kupe and considered him to be her boyfriend. J further testified that she did not want to have sex with the defendant or Russell that evening and did not want to get killed. One of the central issues in the trial was whether the victims had been forced to have sexual relations with the defendant and the other men. The defendant wanted to question J concerning an incident that occurred approximately two weeks before the events at issue

when she accompanied Kupe to the same motel and engaged in consensual sex. The defendant argued that an exception to the rape shield statute[10] applied because J previously had voluntarily engaged in sexual activity with Kupe at the same motel, and she was now claiming that her actions two weeks later were not voluntary. The defendant contended that the previous incident should be admitted to impeach her credibility. The state objected and argued that the incidents charged were "a totally different situation than going voluntarily with a boyfriend to a motel on a prior occasion. . . . This is a totally different atmosphere, a totally different set of circumstances. . . . Certainly no exception to the rape shield [statute] applies." The court agreed with the state and found that it was a different set of circumstances that did not reach the point of impeachment to take it out of the ambit of the rape shield statute.

"Restrictions on the scope of cross-examination are within the sound discretion of the trial court. . . . To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were clearly prejudicial. . . . In determining whether there has

---

[10] General Statutes § 54-86f, commonly known as the rape shield statute, provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . ."

been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Manini*, 38 Conn. App. 100, 111–12, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995); see also *State* v. *McHolland*, 71 Conn. App. 99, 109, 800 A.2d 667 (2002).

The defendant argues that his constitutional rights pursuant to the confrontation clause of the sixth amendment to the United States constitution were violated. The defendant contends that the issue of credibility was central in the trial. Although that certainly is accurate, the issue of whether the victim consented to sexual relations with an individual other than the defendant on a prior occasion is irrelevant to the credibility of the victim.[11]

"Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Internal quotation marks omitted.) *State* v. *Manini*, supra, 38 Conn. App. 110. "*If* the evidence is probative, the statute's

---

[11] The defendant further argues that the prior incident affected J's overall credibility as a witness. It is noted that the defendant did not present any evidence that J was going to claim that the incident two weeks earlier in which she stated that she engaged in *prior* relations with Kupe was not consensual. The incident, therefore, would have no value to impeach her overall credibility.

protection yields to constitutional rights that assure a full and fair defense. . . . *If* the defendant's offer of proof is sufficient to show relevancy, and that the evidence is more probative to the defense than prejudicial to the victim, it must be deemed admissible at trial." (Emphasis added; internal quotation marks omitted.) *State* v. *Cuesta*, 68 Conn. App. 470, 476, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002).

As the court correctly noted, the incident involving the same victim and an individual other than the defendant was a different set of circumstances that had little, if any, probative value. Whether the victim had previous consensual sexual relations with an individual other than the defendant was not relevant to the issue of whether she was forced into sexual relations on the occasion at issue with the defendant and the other men present, even if she had had a prior consensual relationship with one of the other men present. That is the very rationale behind the rape shield statute.

"The statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied." (Internal quotation marks omitted.) *State* v. *Manini*, supra, 38 Conn. App. 109–10. The purpose of the rape shield statute is to protect victims from prejudicial material being admitted into a trial. *State* v. *Rolon*, supra, 257 Conn. 176. The court properly weighed the probative value of the information concerning a prior incident of sexual activity and did not abuse its discretion when it precluded the defendant from pursuing such evidence.

The judgment is affirmed.

In this opinion the other judges concurred.